Rachel S. Doughty (Cal. Bar No. 255904)
Lily A. Rivo (Cal Bar No. 242688)
GREENFIRE LAW, PC
2478 Adeline Street, Suite A
Berkeley, CA 94703
Ph/Fax: (510) 900-9502
Email: RDoughty@greenfirelaw.com
LRivo@greenfirelaw.com

*Attorneys for Plaintiff US Right to Know*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| US RIGHT TO KNOW, a California Non-Profit Corporation<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES and the UNITED STATES CENTERS FOR DISEASE CONTROL AND PREVENTION,<br><br>Defendants. | Case No.: 3:23-cv-04120-PHK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Hearing Date: April 18, 2025<br>Time: 1:00 p.m.<br>Judge: Hon. Peter H. Kang<br>Dept: Floor 15, Courtroom F |

1

**TABLE OF CONTENTS**

2   I.    BACKGROUND ................................................................................................ 5

3        A.   USRTK ............................................................................................... 5

4        B.   FOIA Requests and Pre-Complaint Communications ........................ 5

5            1.    Request One ............................................................................. 6

6            2.    Request Two ............................................................................. 7

7        C.   Complaint and Litigation ................................................................... 8

8            1.    Request One ............................................................................. 8

9            2.    Request Two ........................................................................... 10

10           3.    Fees and Costs ...................................................................... 10

11  II.   Standard of Review ...................................................................................... 11

12  III.  Argument ..................................................................................................... 13

13       A.   USRTK is entitled to an award of fees and costs ............................ 13

14       B.   USRTK requests an award of $141,115.75 in fees and costs. ......... 15

15  IV.  Conclusion .................................................................................................... 19

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS
3:23-cv-04120-PHK

1

**TABLE OF AUTHORITIES**

2  <u>Cases</u>

3  *Am. Civ. Liberties Union of N. Cal. v. Drug Enf't Agency,* 2012 WL 5951312, at *4 (N.D. Cal. Nov.

4      8, 2012) ................................................................................................................... 14

5  *Church of Scientology of Cal. v. U.S. Postal Serv.,* 700 F.2d 486 (9th Cir. 1983) ............... 13, 14

6  *Cohodes v. United States DOJ*, 2025 U.S. Dist. LEXIS 40006, *27 (Jan. 1, 2025) .................. 13

7  *Davy v. C.I.A.*, 550 F.3d 1155 (D.C. Cir. 2008) ............................................................ 12, 15

8  *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223 (D.D.C. 2015) ...................... 13

9  *Fox v. Vice*, 563 U.S. 826 (2011) .................................................................................. 13

10  *Hiken v. Dep't of Def.*, 836 F.3d 1037 (9th Cir. 2016) ................................................ 12, 18

11  *Judicial Watch, Inc. v. U.S. Department of Justice*, 878 F. Supp. 2d 225 (D.D.C. 2012) ........... 15

12  *Long v. IRS*, 932 F.2d 1309 (9th Cir. 1991) ............................................................... 12, 14

13  *Miller v. U.S. Dep't of State*, 779 F.2d 1378 (8th Cir. 1985) .............................................. 13

14  *Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) .............................................. 12

15  *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) .......................................... 17

16  *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704 (D.C. Cir. 1977) .......................... 12

17  *Poulsen v. Dep't of Def.*, 994 F.3d 1046 (9th Cir. 2021) ................................................... 11

18  *Rosenfeld v. U.S. Dep't of Just.,* 904 F. Supp. 2d 988 (N.D. Cal. 2012) .............................. 15

19  *Sierra Club v. United States Environmental Protection Agency*, 75 F. Supp. 3d 1125 (N.D. Cal.

20      2014) ............................................................................................................ 13, 14, 15

21  *United States Department of Defense  v. FLRA,* 510 U.S. 487 (1994) ................................. 15

22  *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476 (D.C. Cir. 1984) ....................................... 12

23  <u>Statutes</u>

24  5 U.S.C. § 552(a)(4)(E) ......................................................................................... 4, 11, 12

25  5 U.S.C. § 552(a)(6)(B)(i) ............................................................................................. 7

26  5 U.S.C. §552 ...................................................................................................... 8, 10

27

28

1  **NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

2  PLEASE TAKE NOTICE that on April 18, 2025 at 1:00 pm or as soon thereafter as it may

3  be heard before the Honorable Peter H. Kang in Courtroom F of the U.S. District Court for the

4  Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff US

5  RIGHT TO KNOW will and does hereby move for an award of attorney's fees and costs pursuant to

6  5 U.S.C. § 552(a)(4)(E). This Motion is based on this Notice of Motion and Motion, the

7  Memorandum of Points and Authorities, the declarations, as well as the papers, evidence and

8  records on file, and any other written or oral evidence or argument as may be presented at or before

9  the time this Motion is heard by the Court.

10  By this Motion, Plaintiff requests the Court award it $139,778.15 in fees and $1,1337.60 in

11  costs, for a total of $141,115.75. The parties have stipulated that Plaintiff is eligible for fees and

12  costs, and Plaintiff is entitled to fees and costs because (1) the records sought by Plaintiff's FOIA

13  Requests are in the public interest, (2) USRTK is a non-profit organization with has no commercial

14  interest in the records, and (3) Defendants had no colorable basis in law for denying USRTK access

15  to the records sought in the FOIA Requests. The amount requested is reasonable, particularly in

16  light of the fact that Plaintiff's counsel represent USRTK on a contingency-fee basis, and further,

17  because Plaintiff's counsel repeatedly tried to resolve the case without delay and the incurrence of

18  associated billable hours. Unfortunately, Defendants' continual delay and settlement posture made

19  this impossible.

20  **MEMORANDUM OF POINTS AND AUTHORITIES**

21  Plaintiff US Right to Know ("USRTK") respectfully moves the Court for an award of

22  attorneys' fees and costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §

23  552(a)(4)(E). USRTK completely prevailed in this action, which caused Defendants UNITED

24  STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES ("HHS") and the UNITED

25  STATES CENTERS FOR DISEASE CONTROL AND PREVENTION ("CDC") to finally search

26  for and process records responsive to USRTK's FOIA Requests, remove improperly asserted

27

28

1  redactions and exemptions, and produce those records to USRTK by a date certain consistent with
2  this Court's Order regarding case management and FOIA record production. ECF No. 32.

3      Prior to USRTK filing the complaint in this action, Defendants had produced no records
4  responsive to USRTK's FOIA requests. After the complaint's filing, Defendants initially responded
5  with partial productions containing improper redactions and claimed exemptions. Ultimately, the
6  agencies folded, completing production and removing improper redactions and claimed exemptions.
7  Had Defendants simply complied with FOIA at the time it originally received USRTK's FOIA
8  Requests, this litigation would have been avoided. Now, with the merits resolved, USRTK requests
9  the Court order Defendants to compensate USRTK's attorneys for their reasonable fees and costs,
10  as outlined herein and in the supporting declarations filed herewith.

11  **I.      BACKGROUND**

12      **A.      USRTK**

13      USRTK is a nonprofit investigative public health research group that uncovers, reports on,
14  and publishes documents and information obtained through public record law and whistleblowers
15  that expose corporate wrongdoing or government failures that threaten our health, environment, and
16  food system. Declaration of Gary Ruskin ("Ruskin Decl."), submitted herewith, ¶ 3. USRTK has
17  co-authored academic studies, published in journals like Public Health, and was a recipient of the
18  2021 James Madison Freedom of Information Award from the Society of Professional Journalists.
19  *Id*. ¶¶ 4, 6-7, 10. USRTK's work has been featured in the New York Times, the British Medical
20  Journal, and other global media outlets. *Id*. ¶ 3.

21      **B.      FOIA Requests and Pre-Complaint Communications**

22      In January 2023, USRTK began submitting public records requests in pursuit of data from
23  public institutions in an effort to discover what is known about the origins of the largest outbreak of
24  Ebola virus in history, which afflicted West Africa in 2014, claiming more than 11,000 lives in
25  Guinea, Sierra Leone, and Liberia. Ruskin Decl. ¶¶ 11-12. As part of the organization's
26  investigation into the origins of the 2014 Ebola outbreak, USRTK submitted a FOIA request
27  ("Request One") to CDC on January 24, 2023, and USRTK submitted a FOIA request to HHS
28  ("Request Two") on January 31, 2023.  *Id*. ¶ 13; ECF 1.1 and 1.2. The records sought through these

1  requests is essential to the public understanding of the operations and activities of the government.

2  Ruskin Decl. ¶¶ 14-15.

3                    **1.    Request One**

4          The CDC contacted USRTK on January 30, 2023, regarding Request One, invoking the

5  "unusual circumstances" exception to FOIA's standard twenty business day determination deadline,

6  stating that it anticipated being able to produce records by March 13, 2023. Ruskin Decl. ¶ 16. On

7  that same date, the CDC also asked for additional contact information regarding persons identified

8  in Request One, which USRTK responded to on January 31, 2023. *Id.*

9          On February 9, 2023, the CDC wrote USRTK to explain that the agency was unable to

10 process Request One "as it is currently stated." *Id*. ¶ 17. The CDC stated it was not obligated to

11 process requests when doing so "would be unduly burdensome or otherwise unreasonably strain

12 limited agency resources," based on locating, reviewing, and assembling "a vast quantity of

13 material." *Id.*  If USRTK wished for the agency to proceed with its search for responsive

14 documents, the CDC stated the scope of the request would need to be "substantially narrowed." *Id.*

15 USRTK responded the following day, February 10, 2023, providing CDC a narrowed scope. *Id.* ¶

16 18.

17         On March 9, 2023, the CDC wrote USRTK, stating the agency still could not process

18 Request One because it was "unduly burdensome" or would "otherwise unreasonably strain limited

19 agency resources." *Id.* ¶ 19. Again, the agency asked that USRTK substantially narrow the scope of

20 their request. *Id.* In response to the CDC's request, on March 20, 2023, USRTK again modified its

21 search parameters for Request One; however, USRTK noted that aside from these modifications,

22 the request would remain as written because, "placing further limits would hamper [USRTK's]

23 effort to obtain records associated with the CDC's knowledge of the origins of the 2014-2016 Ebola

24 virus outbreak." *Id.* ¶ 20. USRTK also explained it believed it had "reasonably describe[d]" the

25 records sought in Request One by (1) providing the names of individuals whose records are sought;

26 (2) providing the emails for these individuals, as specifically requested by the CDC; (3) specifying

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**
3:23-cv-04120-PHK

1    the format of documents sought; (4) specifying keywords for searches; and, (5) specifying the time

2    frame for searches. *Id.*

3         USRTK did not receive any further communication from the CDC; therefore, on May 15,

4    2023, USRTK wrote the CDC to ask for a status update on Request One, as well as an estimated

5    date of completion. *Id.* ¶ 21. The following day, the CDC responded by acknowledging USRTK's

6    narrowed scope of the request, provided on March 20, 2023. *Id.* At that point in time, the CDC

7    stated, "program staff had completed their search for the requested records, and the case was

8    awaiting final review." *Id.* The CDC did not provide an estimated date for production, stating only

9    that it would be "as soon as possible." *Id.*

10        One month later, on June 15, 2023, having received no communications or records

11   responsive to Request One, USRTK requested a formal "determination" on the FOIA request

12   pursuant to 5 U.S.C. § 552(a)(6)(B)(i). *Id.* ¶ 22. CDC did not respond to this request or provide a

13   "determination" to USRTK. *Id.*

14                          **2.    Request Two**

15        On February 1, 2023, the HHS informed USRTK that Request Two was being referred to

16   the CDC for direct response. *Id.* ¶ 23. Receiving no further communications or acknowledgement

17   by the CDC regarding custody of Request Two, USRTK wrote to the CDC on March 9, 2023, and

18   requested that the agency acknowledge custody of Request Two. *Id*. Additionally, USRTK stated

19   that neither HHS nor CDC had yet indicated when to expect a formal determination on Request

20   Two, nor an estimated date of completion for Request Two consistent with the FOIA. *Id.* Later that

21   day, the CDC responded and said it would make sure make sure that acknowledgement of the

22   request occurred by March 10, 2023. *Id.*

23        On March 15, 2023, the CDC wrote to USRTK to request further information "to aid the

24   agency in complying with" Request Two. *Id.* ¶ 24. USRTK responded on March 20, 2023, by

25   providing further information, as requested. *Id.* USRTK also stated that it considered the March 15,

26   2023, letter to be an acknowledgment by the CDC of Request Two. *Id.*

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS
3:23-cv-04120-PHK

On May 15, 2023, USRTK emailed the CDC to request a status update and an estimated date of completion for Request Two. *Id.* ¶ 25. The CDC responded the next day, stating the agency's search was complete, and the records were "undergoing public disclosure notification." *Id.*

CDC did not communicate with USRTK thereafter nor provide responsive documents. *Id.* ¶ 26.

### C.    Complaint and Litigation

Because CDC was non-responsive to USRTK's FOIA Requests, Plaintiff filed the complaint in this action on August 14, 2023. ECF 1. By that time, almost seven months had passed from USRTK's submission of both Request One and Request Two. After receiving the complaint, Defendants asked for a two-week extension to file their answer, and filed their answer on September 29, 2023. Declaration of Lily Rivo ("Rivo Decl."), submitted herewith, ¶ 4; ECF 19.

### 1.    Request One

In October and November of 2023, the parties communicated several times, with USRTK asking Defendants to identify when records would be provided responsive to Request One. Rivo Decl. ¶ 7. On November 22, 2023, Defendants' counsel stated that an interim release might not occur until December 2023. *Id.*

On December 19, 2023, Plaintiff once again requested a status update on production. *Id.* ¶ 8. On December 21, 2023, Plaintiff followed up by email, requesting the universe of records for Request One and an expected date by which Plaintiff could expect a rolling release of records. *Id.* The CDC finally released its first round of records responsive to Request One on December 22, 2023 – nearly a year after the request was made. *Id.* ¶ 8; ECF 29, p. 2. Through that production, the CDC located 536 responsive records, and released 259 pages in full, 211 pages in part, and withheld 66 in full. ECF 29, p. 2. The agency withheld information from release, citing 5 U.S.C. §552 Exemptions 4, 5, and 6. *Id.*

On January 4, 2024, after USRTK had reviewed the record production, Plaintiff requested Defendant CDC provide a Vaughn index to determine the relevance of applied exemptions and withholding of information. *Id.*; Rivo Decl. ¶ 9. On January 16, 2024, Defendant CDC confirmed

they would produce the Vaugh index, and USRTK immediately requested a production deadline for the index and further records. Rivo Decl. ¶ 9.

From January 16th to February 14th, Plaintiff's counsel repeatedly emailed counsel for Defendants requesting a production deadline. *Id.* On January 31, 2023, Defendants declined to provide a date by which the Vaughn index would be provided. ECF 29, p. 2. On February 13, 2024, counsel for Defendants wrote that Defendant CDC anticipated having a draft Vaughn index by March 29, 2024, but would not commit to this date on Plaintiff's request by email the next day. *Id.* ¶ 9 and Exh. A.

On February 23, 2024, Defendants produced five documents, but no Vaughn index was provided. ECF 29, pp. 2-3. On March 4, 2024, the parties submitted a Joint Case Management Statement. ECF 29. Because Plaintiff had spent months requesting a Vaughn index from Defendants—to no avail—USRTK requested the Court set March 29, 2024 as a deadline by which Defendant CDC must produce the index. *Id.*, p. 5. On March 8, 2024, the Court issued an in-chambers text order vacating the initial case management conference set and re-setting the initial case management conference for April 20, 2024. ECF 30. The Court ordered the parties to refile a case management statement discussing the status of the Vaughn index and progress on the FOIA requests by April 19, 2024. *Id.*

On March 29, 2024, Defendants produced to Plaintiff a supplemental release of 536 documents responsive to Request One. ECF 31, p. 3. The cover letter indicated that a Vaughn index would be sent at a later, unidentified date. *Id.*

On April 1, 2024, counsel for Plaintiff wrote to counsel for Defendants confirming the Vaughn index would be sent by the end of the week (April 5th). ECF 31, p. 2. On April 2, 2024, Defendants provided the Vaughn index for documents responsive to Request One. *Id.* On April 16, 2024, upon review of the Vaughn index, Plaintiff identified approximately 29 pages for which they requested more information and/or a lifting of redactions. *Id.*

On April 17, 2024, Defendants stated they were in the process of reviewing the documents and challenged redactions. *Id.* Defendants agreed to re-process the documents by April 26, 2024. *Id.*

1    On April 19, 2024, the parties filed a Joint Case Management Conference Statement, as

2  directed by the Court in its in-chambers text order of March 8, 2024. ECF 30; ECF 31. In that

3  statement, Plaintiff requested the Court set a firm deadline by which Defendants must respond in

4  full to Plaintiff's request to re-process documents, including by lifting redactions and producing

5  documents and/or providing more information for applied exemptions. ECF 31, p. 4.

6    On April 22, 2024, the Court issued an in-chambers text order requiring Defendants to re-

7  process documents no later than April 26, 2024. ECF 32. Plaintiffs thereafter asked Defendants to

8  also provide further information regarding remaining redactions. Rivo Decl. ¶ 10.

9    Defendants produced re-processed documents on April 26, 2024. ECF 36, p. 1. On May 7,

10  2024, Plaintiff requested further information from Defendants concerning some of the remaining

11  exemptions and redactions in the re-processed documents. Rivo Decl. ¶ 10. On May 10, 2024, CDC

12  provided its final production, lifting all Exemption 4 redactions and apply Exemption 5 redactions

13  to a single, two-page document. *Id.* Exemption 5 redactions were maintained only as to a single,

14  two-page document. *Id.*

15  **2.    Request Two**

16    Days after this lawsuit was filed, on August 18, 2023, Defendants produced records

17  responsive to Request Two. ECF 29, p. 3. Through this production, Defendants located 391 pages

18  of responsive records and released 219 either in full or with minor redactions. Rivo Decl. ¶ 6. The

19  remaining 172 pages were withheld based on Defendants' assertion of 5 U.S.C. § 552 Exemptions 4

20  and 6. *Id.* Following production, Plaintiff requested a Vaughn index for redactions in the

21  production. *Id.*. After further prompting from Plaintiff's counsel, Defendants reviewed the

22  production, and on November 29, 2023, they ultimately lifted all redactions and claimed

23  exemptions aside from those involving personal numbers and passcodes, which are of no interest to

24  USRTK. *Id.*

25  **3.    Fees and Costs**

26    On May 17, 2024, the parties informed the Court that they had resolved all issues pertaining

27  to Defendants' production for Request One and Request Two, except for attorneys' fees and costs.

28

ECF 34, p. 3; Declaration of Rachel Doughty ("Doughty Decl."), submitted herewith, ¶ 7. On June 7, 2024, Plaintiff's counsel sent correspondence to Defendants' counsel with an estimate of Plaintiff's fees and costs and an offer of settlement. ECF 39, p. 2. On June 24, 2024, Defendants requested a formal demand letter with supporting billing summaries. *Id.* On July 5, 2024, Plaintiff sent Defendants a formal demand letter with supporting billing entries and requested a response by July 26, 2024. Rivo Decl. ¶ 11, Exh. B.

On September 13, 2024 (more than two months after Plaintiff's formal demand letter), Defendants provided a formal response to USRTK's fees and costs demand. *Id.* ¶ 13, Exh. B.

Written settlement communications continued from October 2024 through January 2025, to no avail. Id. ¶ 14, Exh. B. Plaintiff's counsel also repeatedly called counsel for Defendants during this period of time in an effort to speed up resolution of the case and to avoid the unnecessary accrual of attorneys' fees. *Id.* ¶ 14

On February 10, 2025, the parties attended a settlement conference before Magistrate Judge Laurel Beeler, which also did not lead to settlement. *Id.* ¶ 16.

USRTK rescinded its outstanding offer (as settlement was not within reach, despite Plaintiff's best efforts) and prepared the instant motion. *Id.* ¶ 10.

## II. Standard of Review

"The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff "substantially prevails" if the plaintiff "obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(I)–(II). "A complainant is deemed eligible for a fee award by satisfying either subsection." *Poulsen v. Dep't of Def.*, 994 F.3d 1046, 1050 (9th Cir. 2021) (quotation omitted). If a plaintiff establishes eligibility to fees and costs, "the district court may, in the exercise of its discretion, determine that the [complainant] is *entitled* to an award of

1    attorney's fees." *Id.* (alteration and emphasis in original) (citing *Long v. IRS*, 932 F.2d 1309, 1313

2    (9th Cir. 1991) (per curiam)).

3         In making the "entitlement" determination, courts consider four criteria: "(1) the public

4    benefit from the disclosure, (2) any commercial benefit to the plaintiff resulting from the disclosure,

5    (3) the nature of the plaintiff's interest in the disclosed documents, and (4) whether the

6    government's withholding of the records had a reasonable basis in law." *Hiken v. Dep't of Def.*, 836

7    F.3d 1037, 1044 (9th Cir. 2016) (citation omitted). "Essentially, the first three factors assist a court

8    in distinguishing between requesters who seek documents for public informational purposes and

9    those who seek documents for private advantage." *Davy v. C.I.A.*, 550 F.3d 1155, 1160 (D.C. Cir.

10   2008) ("*Davy II*"). As to the fourth factor in the entitlement calculus, "[t]he question is not whether

11   [the plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the

12   agency has shown that it had any colorable or reasonable basis for not disclosing the material until

13   after [the plaintiff] filed suit"; and if the agency makes such a showing, that factor is "weighed

14   along with other relevant considerations in the entitlement calculus." *Id.* at 1162–63 (citation

15   omitted). In deciding fees and costs, courts should "bear[] in mind that under FOIA, attorneys' fees

16   are to be awarded in light of [FOIA's] basic policy—'the encouragement of maximum feasible

17   access to government information.'" *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1499 (D.C.

18   Cir. 1984) (quoting *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977)).

19        After satisfying both eligibility and entitlement requirements, the next step is to determine

20   an award of "reasonable" fees and costs that were "reasonably incurred" in the case. 5 U.S.C. §

21   552(a)(4)(E)(i). "The 'customary method' for awarding fees is the lodestar method, which is

22   performed by multiplying the number of hours reasonably expended by the prevailing party in the

23   litigation by 'reasonable hourly rate.'" *Hiken*, 836 F.3d at 1044 (quoting *Morales v. City of San

24   Rafael*, 96 F.3d 359, 363 (9th Cir. 1996)). There is a "strong presumption" that the lodestar figure

25   represents a reasonable award. *Id.* "It is axiomatic that 'trial courts need not, and indeed should not,

26   become green-eyeshade accountants' in examining fee requests since '[t]he essential goal in shifting

27   fees (to either party) is to do rough justice, not to achieve auditing perfection.'" *Elec. Priv. Info. Ctr.*

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS
3:23-cv-04120-PHK

1  *v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223, 235 (D.D.C. 2015) (*quoting Fox v. Vice*, 563 U.S. 826,

2  838 (2011)).

3  **III.    Argument**

4  Defendants have stipulated that USRTK is eligible for fees and costs in this case. ECF 57.

5  USRTK also is entitled to fees and costs because the records produced benefit the public interest,

6  USRTK gained no commercial benefit from the litigation, USRTK's interest in responsive records

7  is to investigate the 2014 Ebola epidemic in West Africa and promote the government's

8  transparency and accountability, and Defendants' failure to timely respond to the Plaintiff's FOIA

9  Requests and its invocation of exemptions had no reasonable basis in law. Finally, USRTK's

10  requested fees and costs are reasonable and represent the exercise of sound billing discretion.

11  **A.    USRTK is entitled to an award of fees and costs**

12  USRTK is entitled to an award of fees and costs. The first factor in the entitlement analysis

13  is the public benefit derived from disclosure. "The public-benefit prong 'speaks for an award of

14  attorney's fees where the complainant's victory is likely to add to the fund of information that

15  citizens may use in making vital political choices.'" *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C.

16  Cir. 1995) (internal brackets, citation omitted); *Cohodes v. United States DOJ*, 2025 U.S. Dist.

17  LEXIS 40006, *27 (Jan. 1, 2025). The public benefit factor takes into account the "degree of

18  dissemination and the likely public impact that might result from disclosure." *Sierra Club*, 75 F.

19  Supp. 3d at 1142 (*citing Church of Scientology*, 700 F.2d at 493). It is in the public interest to

20  disclose information to the media or private parties who "seek to shed light on the actions of the

21  government and the underlying circumstances of newsworthy events." *Miller v. U.S. Dep't of State*,

22  779 F.2d 1378, 1389-90 (8th Cir. 1985).

23  As described above, USRTK is a nonprofit investigative public health research group that

24  uncovers, reports on, and publishes documents and information obtained through public record law

25  and whistleblowers that expose corporate wrongdoing or government failures that threaten our

26  health, environment, and food system. Ruskin Decl. ¶ 3. USRTK is presently engaged in an

27  investigation into the origins of the 2014 Ebola epidemic in West Africa. *Id*. ¶ 11.

28

1    The records sought by USRTK are essential to the public understanding of the operations

2    and activities of the government. Ruskin Decl. ¶¶ 14-15. While mainstream media has widely

3    reported the "origin story" of the outbreak as a two-year old boy in Guinea playing in a bat-infested

4    tree stump, some have cast doubt on the established narrative. *Id.* ¶ 12. Several first-hand accounts

5    and reports, as well as a new phylogenetic analysis of the Ebola outbreak, suggest a hidden and

6    widespread Ebola outbreak in Sierra Leone before authorities officially recognized it. *Id.* And, a

7    U.S. government-supported research laboratory in Kenema, Sierra Leone has come under scrutiny

8    as a possible source of the epidemic's origin. *Id.*

9    In Request One and Request Two, USRTK noted that disclosure of the requested records

10   would contribute to a reasonably broad audience of interested persons' understanding of the origins

11   of the West African Ebola virus epidemic. *Id.* ¶ 15; ECF 1.1 and 1.2. USRTK promptly posted all of

12   records produced in this case on its public website. *Id.* ¶ 28. The website pages addressing the

13   origins of the Ebola epidemic, including the documents produced by CDC and HHS, have been

14   accessed almost 3,000 times to date. *Id.*

15   The second and third entitlement factors are frequently considered together. *See Sierra Club*,

16   75 F. Supp. 3d at 1144. In general, "[i]f either commercial benefit will inure to the plaintiff from the

17   [obtained] information or plaintiff intends to protect a private interest…an award of attorney's fees

18   is not recoverable." *Id.* (*quoting Church of Scientology,* 700 F.2d at 494). Conversely, "where

19   plaintiff is indigent or a nonprofit public interest group, an award of attorney's fees furthers the

20   FOIA policy of expanding access to government information." *Id.* Ninth Circuit precedent instructs

21   courts evaluating these two factors that they "should generally award fees if the complainant's

22   interest in the information sought was…public-oriented." *Id.* (quoting *Long*, 932 F.2d at 1316).

23   Additionally, "where a plaintiff is a 'nonprofit public interest group, an award of attorney's fees

24   furthers the FOIA policy of expanding access to government information.'" *Am. Civ. Liberties

25   Union of N. Cal. v. Drug Enf't Agency,* 2012 WL 5951312, at *4 (N.D. Cal. Nov. 8, 2012) (*citing

26   Church of Scientology*, 700 F.2d at 494)).

27

28

Both factors weigh in favor of awarding fees and costs. USRTK is a non-profit organization. Ruskin Decl. ¶ 3. USRTK has no commercial interest in the records that are responsive to Request One and Request Two. *Id*. ¶ 29. USRTK's advocacy in this matter contributes significantly to public understanding of the operations or activities of the government," especially as it relates to Ebola and public health emergencies. *U.S. Dep't of Def. v. FLRA,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994). Accordingly, the Court should find these factors support a fees and costs award. *See also, e.g., Jud. Watch, Inc.*, 878 F. Supp. 2d at 236 (factors weigh in favor of fees where "Judicial Watch has no commercial stake in this litigation and because it sought records from the DOJ to further the FOIA's purpose").

The fourth factor considers "whether the government's withholding of the records sought had a reasonable basis in law." *Sierra Club*, 75 F. Supp. 3d at 1145. The denial of a FOIA request must have a colorable basis in law and not have been merely for the purpose of frustrating the requester. *Rosenfeld v. U.S. Dep't of Just.,* 904 F. Supp. 2d 988, 999 (N.D. Cal. 2012) (citations omitted). The burden is on the government to demonstrate that its conduct is reasonable. *Davy II,* 550 F.3d at 1163.

Defendants have no colorable basis in law for denying USRTK access to the records sought in the FOIA Requests. The Agencies failed to comply with FOIA's 20-day determination deadline, repeatedly failed to provide estimated completion dates, and failed to produce any records until almost eight months after receiving USRTK's FOIA Requests, and then only after they were sued. The vast majority of redactions that Defendants initially identified as being exempt from production were lifted, and those exemptions that remained were inconsequential to Plaintiff's requests.

In sum, all entitlement factors weigh in favor of awarding USRTK fees and costs.

### B.      USRTK requests an award of $141,115.75 in fees and costs.

USRTK requests the Court award it $139,778.15 in fees and $1,1337.60 in costs, for a total of $141,115.75. Doughty Decl. ¶¶ 16-22, Exh. 1.

The tables below presents a summary for the Court's convenience. The hours identified herein and on the supporting declarations are current through March 12, 2025. Plaintiff expects to incur additional fees and costs for work required in filing this motion, reviewing any opposition

from Defendants and replying to the same, and in preparing for and arguing the motion on fees.

Plaintiff reserves the right to submit subsequent timesheets and invoices to address these additional

fees and costs.

| ATTORNEYS' FEES | | | | | |
|---|---|---|---|---|---|
| Biller | Total Hours Billed | Hours Demanded | % Reduction | Rate (Based on Laffey Matrix or Lower) | Total Laffey Demand |
| Rachel Doughty | 19.201 | 20.8 | 7.69% | $1,141.00 | $21,908.34 |
| Lily Rivo | 104.648 | 113.3 | 7.64% | $948.00 | $99,206.30 |
| Jessica Blome | 2.75 | 4.3 | 36.05% | $948.00 | $2,607.00 |
| Rae Lovko | 13.1 | 13.6 | 3.68% | $1,141.00 | $14,947.10 |
| Administrative Staff/Paralegals | 4.3 | 33 | 86.97% | $258.00 | $1,109.40 |
| Total | 185 | 144 | 23.77% | | $139,778.15 |

| COSTS | | |
|---|---|---|
| Date | Expense | Amount |
| 8/23/2023 | USPS certified mail receipts for the process of service | $47.16 |
| 8/23/2023 | Filing fee for Pleadings | $402.00 |
| 1/31/2025 | FedEx charges for overnight delivery to court | $32.46 |
| 2/14/2025 | Parking fees for attendance at hearing | $28.00 |
| 2/14/2025 | Parking fees for attendance at hearing | $28.00 |
| 3/12/25 | Drury fees | $800.00 |
| Total | | $1,1337.60 |

In its discretion, Plaintiff's counsel has already reduced its fee demand by 44 hours (an overall

reduction in hours of approximately 23.77%). *Id.* ¶ 15.

      USRTK submits timesheets for the hours incurred in this case. *Id.* at <u>Exh. 1</u>. The table below

breaks down work performed by billing category. *Id.* ¶ 19.

| Billing Category | Total Hours Incurred | Demand Hours | % Reduction |
|---|---|---|---|
| L190 Other Case Assessment, Development and Administration | 2 | 1.25 | 37.50% |
| L210 Pleadings | 33.2 | 18.175 | 45.26% |
| L140 Document/File Management | 15.6 | 0.9 | 94.23% |

| | | | |
|---|---|---|---|
| L250 Other Written Motions and Submissions | 3.9 | 3.2 | 17.95% |
| P280 Other | 0.8 | 0.2 | 75.00% |
| L230 Court Mandated Conferences | 14.2 | 11.9 | 16.20% |
| P300 Structure/Strategy/Analysis | 1.8 | 1.8 | 0.00% |
| P100 Project Administration | 0.3 | 0.2 | 33.33% |
| L120 Analysis/Strategy | 27.8 | 26.4 | 5.04% |
| L160 Settlement/Non-Binding ADR | 56 | 52.804 | 5.71% |
| C200 Researching Law | 3 | 2.67 | 11.00% |
| L460 Post-Trial Motions and Submissions | 26.1 | 24.5 | 6.13% |

As the above table demonstrates, 27.8 hours were spent on "L120 Analysis/Strategy." This category represents work related to communication with Defendants regarding record production and claimed exemptions, as well as reviewing records produced. *Id.* ¶ 20. The most significant amount of incurred hours resulted from work associated with settlement (L160 Settlement/Non-Binding ADR with 56 hours) and preparation of this fee motion (L460 Post-Trial Motions and Submissions with 26.1 hours). *Id.* Of the 144 hours for which Plaintiff seeks fees, approximately 54% of the fees are based on work associated with settlement and this fee motion. *Id.* In this regard, Plaintiff *repeatedly* tried to resolve the case without delay and the incurrence of associated billable hours; however, Defendants' delay and settlement posture made this impossible. Rivo Decl. ¶ 15.

In contingency matters like this, *see* Doughty Decl. ¶ 12, Ruskin Decl. ¶¶ 30-32, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

1    There are few public interest lawyers who are willing and able to litigate FOIA requests on a

2    contingency-fee basis. Ruskin Decl. ¶ 31. Plaintiff's counsel, however, has successfully done so on

3    multiple occasions. *Id.* ¶ 32. The attorneys who worked on this case are each experienced attorneys

4    with decades of experience in civil and public interest litigation. Doughty Decl. ¶ 3-6.

5    The fees calculation is based on reasonable hourly rates multiplied by hours reasonably

6    expended in the litigation. *Hiken*, 836 F.3d at 1044. First, as to hourly rates, USRTK submits the

7    declaration of Richard Drury, an attorney licensed to practice law in the State of California.

8    Declaration of Richard Drury ("Drury Decl."), submitted herewith, ¶ 2. Mr. Drury, a 1990 graduate

9    of Yale Law School, has an extensive legal background, including clerking for Chief Judge Thelton

10    E. Henderson of this Court from 1990-1992 and serving as legal director for Communities for a

11    Better Environment for nearly a decade. *Id.* ¶¶ 2–3. Mr. Drury is a founding partner of Lozea Drury

12    LLP, where he represents "workers, community groups, and public interest organizations." *Id.* ¶ 3.

13    He is also an Adjunct Professor at the University of California Berkeley School of Law, Golden

14    Gate University School of Law, and the New College School of Law. *Id.* Mr. Drury has been named

15    a "SuperLawyer" every year since 2008. *Id.*

16    Mr. Drury familiarized himself with this litigation, reviewing pertinent litigation filings,

17    communications regarding exemptions, and settlement correspondences. *Id.* ¶ 21. Mr. Drury

18    "reviewed the resumes and background of Plaintiff's counsel." *Id.* ¶ 22. Mr. Drury is also

19    "personally familiar with Greenfire Law, PC, and its principal, Rachel Doughty[,]" noting that they

20    "have a reputation for high quality public interest work." *Id.*

21    In preparing his work for this case, Mr. Drury "studied the prevailing market rates for

22    attorneys in these areas. In doing so, I have consulted with colleagues about prevailing market rates

23    for work in these courts and reviewed rates based on fee awards." *Id.* ¶ 23. Based on his review of

24    the applicable materials and understanding of prevailing market rates in this legal community, it is

25    Mr. Drury's opinion that "the market rates identified by Plaintiffs' counsel are well within the range

26    of, if not below, prevailing market rates for attorneys with comparable expertise and skill in the San

27    Francisco Bay Area" and that the "rates for counsel who billed time in this matter are consistent

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS
3:23-cv-04120-PHK

with, or substantially lower than, rates for attorneys with similar skill and experience for comparable litigation in the Northern District of California." *Id*. ¶¶ 24–25. For instance, Mr. Drury believes the current rate Ms. Doughty and Ms. Lovko would command is $1141/hour, and the current rate that Ms. Rivo and Ms. Blome would command is $948/hour. *Id*. ¶ 25. Mr. Drury opines that a reasonable rate for paralegals is $258/hour. *Id*.

Ms. Doughty received her J.D. in 2004, is a designated "California Super Lawyer," and was awarded the Clay Award for Consumer Protection and the award for Top Verdicts 2022 by the Daily Journal. Doughty Decl. ¶ 3.  Ms. Lovko received her J.D. in 2000, has substantial post-trial litigation experience (including experience with fee and cost motions), and has been a contributing author in several Continuing Education of the Bar (CEB) publications. *Id*. ¶ 6.  Ms. Rivo received her J.D. in 2005, previously worked for the Department of Justice in representing the State of California, and has worked on a number of FOIA request cases. *Id.* ¶ 5.

Mr. Drury also notes that Plaintiff "achieved excellent results in this lawsuit, as demonstrated by the fact that through their diligence, they compelled Defendants to produce records and remove baseless exemptions and withholdings." *Id.* ¶ 26. This result was achieved despite the fact that "[t]he expense and risk of public interest litigation has not diminished over the years; to the contrary, these cases are in many ways more difficult than ever." *Id.* ¶ 28. He concludes that the number of hours spent by counsel in this case are reasonable. *Id.* ¶ 27.

In addition to USRTK's fees, Plaintiff also incurred $1,337.6 in recoverable costs. Doughty Decl. ¶ 22. These costs include filing and postage fees, as well as expert fees for Richard Drury. *Id.*

**IV.    Conclusion**

Based on the analysis and USRTK's expert's opinion, USRTK respectfully requests the Court award $139,778.15 in fees and $1,1337.60 in costs, for a total of $141,115.75.

Dated: March 14, 2025                              Respectfully Submitted,

                                                   */s/ Lily A. Rivo*
                                                   _____
                                                   Lily A. Rivo
                                                   Rachel S. Doughty
                                                   GREENFIRE LAW, PC
                                                   Attorneys for Plaintiff