PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
MOLLY A. FRIEND (CABN 289677)
Assistant United States Attorney

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7177
     Facsimile:  (415) 436-6748
     molly.friend@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| US RIGHT TO KNOW, a California Non-Profit Corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES and the<br><br>UNITED STATES CENTERS FOR DISEASE CONTROL AND PREVENTION,<br><br>        Defendants. | Case No. 3:23-cv-04120-PHK<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS**<br><br>Freedom of Information Act<br><br>Hearing Date: April 18, 2025<br>Time: 1:00 p.m.<br>Judge: Hon. Peter H. Kang<br>Dept: Floor 15, Courtroom F |

# CONTENTS

I.  INTRODUCTION.................................................................................................1

II.  BACKGROUND................................................................................................2

III.  LEGAL STANDARD.........................................................................................6

IV.  ARGUMENT......................................................................................................6

  A.  Plaintiff Is Not Entitled To An Award Of Attorneys' Fees Because
      Defendants Had A Reasonable Basis In Law For Their Positions....................6

  B.  Plaintiff's Request For Attorney's Fees And Costs Should Be Reduced To
      Reflect The Simple Nature Of The Litigation................................................12

      1.  Plaintiff's Fees Demand And Claimed Hourly Rates Are Unreasonable
          When Compared to *USRTK v. DOD*...............................................13

          a.  Plaintiff's Billing Is Excessive Given The Duplicative Nature
              Of This Case Compared To USRTK v. DOD.............................13

          b.  Plaintiff's Claimed Hourly Rates Are Excessive......................14

      2.  Plaintiff's Billing For This Matter Is Excessive On Its Own.............15

          a.  Plaintiff's Fees-On-Fees Demand Is Excessive.......................17

V.  CONCLUSION.................................................................................................18

## **Cases**

*Blum v. Stenson*, 465 U.S. 886 (1984) ............................................................................... 6

*Brown v. Mandarich Law Group, LLP*, No. 13-cv-04703-JSC, 2014 WL 1340211 (N.D. Cal. Apr. 2, 2014) ................................................................................................................................. 15

*Castillo v. United States Customs*, No. 23-cv-03110-RS, 2024 WL 1182865 (N.D. Cal. Mar. 19, 2024) 8, 9

*Center for Investigative Reporting v. U.S. Customs and Border Protection*, 436 F.Supp.3d 90, (D.D.C. 2019) ........................................................................................................................................ 10

*Church of Scientology v. USPS*, 700 F.2d 486 (9th Cir. 1983) .......................................... 6

*Citizens Com'n on Human Rights v. Food and Drug Admin.*, 45 F.3d 1325 (9th Cir. 1995) ................ 10

*Coffey v. Bureau of Land Mgmt*, 316 F. Supp. 3d 168 (D.D.C. 2018) ............................... 17

*Electronic Frontier Foundation v. Office of Dir. of Nat. Intelligence*, No. 07-cv-05278-SI, 2008 WL 2331959 (N.D. Cal. June 4, 2008) ......................................................................................... 15

*Ellis v. United States*, 941 F. Supp. 1068 (D. Utah 1996) ................................................. 9

*Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427 (2019) ........................................ 10

Judicial Watch, Inc. v. FBI, 522 F.3d 364 (D.C. Cir. 2008) ............................................... 7

*Lahr v. National Transp. Safety Bd.*, 569 F.3d 964 (9th Cir. 2009) ................................... 11

*Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1089 (9th Cir. 1997) ................ 11

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975) ........................................ 11

*Or. Nat'l Desert Ass'n v. Locke*, 572 F.3d 610 (9th Cir. 2009) ......................................... 6

*Pomares v. Dep't of Veterans Affrs.*, 113 F4th 870 (9th Cir. 2024) .................................. 10

*Rosenfeld v. U.S. Dep't of Justice*, 903 F. Supp. 2d 859 (N.D. Cal. 2012) ..................... 6, 14

*Schoenberg v. F.B.I.*, 2 F.4th 1270 (9th Cir. 2021) ................................................... 7, 8, 9

*Simon v. United States*, 587 F. Supp. 1029 (D.D.C. 1984) ............................................... 9

Tax Analysts v. Dep't of Justice, 965 F.2d 1092 (D.C. Cir. 1992) ................................. 7, 8

*USRTK v. United States Department of Defense, et al.*, No. 3:23-cv-02956-TSH (N.D. Cal.) ............. 12

*Waage v. IRS*, 656 F. Supp. 2d 1235 (S.D. Cal. 2009) ..................................................... 7

*Weisberg v. U.S. Dep't of Justice*, No. CIV.A. 75-1996 WL 11984 (D.D.C. May 28, 1987) ............... 17

*Yonemato v. Dep't of Veterans Affairs*, 549 F. App'x 627 (9th Cir. 2013)................................................ 9

# I.    INTRODUCTION

It is undisputed that—without filing a single motion—Plaintiff received the records it requested in its Freedom of Information Act ("FOIA") requests to the United States Department of Health and Human Services ("HHS") and the United States Centers for Disease Control and Prevention ("CDC"). Nevertheless, Plaintiff now seeks $141,115.75 (and counting) in attorneys' fees and costs for this simple, non-adversarial FOIA dispute. But Plaintiff cannot demonstrate that it is entitled to *any* fees or costs for bringing this lawsuit. Plaintiff does not demonstrate that Defendants' positions had no reasonable basis in law or any evidence that Defendants' conduct was obdurate or intended to frustrate the requester. Any delay in production here was reasonable as it was due to either mandatory pre-disclosure notification procedures or an administrative backlog through which the CDC was working. Moreover, every withholding that Defendants eventually removed had a reasonable basis in law, as those withholdings were applied to protect information designated as confidential by a third party or were part of the internal, pre-decisional deliberative process. The fact that Plaintiff received those records in this case demonstrates not that Defendants' original withholdings did not have a reasonable basis in the law but rather that Defendant engaged in good faith and proactive conduct that was not required by the FOIA and, as a result, Plaintiff received records to which it was not entitled under the FOIA. Plaintiff thus is not entitled to any fees and costs from Defendants.

Even if Plaintiff could demonstrate that it is entitled to fees and costs, Plaintiff's current request for $141,115.75 in fees and costs—and that number is projected to grow during these fees motion proceedings—is excessive. No reasonable private client would pay such exorbitant sums for what amounts to a simple discovery dispute that was resolved without a single filed motion. Further, less than three months prior to the filing of the instant motion, Plaintiff and Plaintiff's counsel filed a nearly identical fees and costs motion in a FOIA case before Judge Hixson, making the same legal arguments and relying on substantially similar declarations. Yet notwithstanding the copy-and-paste nature of the fees dispute before this Court, Plaintiff seeks significantly *more* for the fees-on-fees portion for this case than it sought (and approximately double the amount that Judge Hixson found to be reasonable) in that contemporaneous FOIA case. Finally, Plaintiff's counsel's requested billing rates exceed the amounts that they sought—and were awarded—earlier this month in the case before Judge Hixson.

1   For the following reasons, Defendants respectfully request that the Court deny Plaintiff's motion

2   for fees and costs.

3   **II.     BACKGROUND**

4   This action arises out of two FOIA requests submitted to the CDC on January 24, 2023

5   ("Request One") and to HHS on January 31, 2023 ("Request Two").[1] Declaration of Roger Andoh

6   ("Andoh Decl.") at ¶ 7.

7   <u>**The FOIA Requests and Pre-Complaint Filing Communications with Plaintiff:**</u>

8   **FOIA Request One:** The CDC acknowledged receipt of Request One on January 25, 2023,

9   assigning a tracking number, and providing an estimated production date of March 13, 2023. *Id.* at ¶ 10.

10  On January 30, 2023, the CDC invoked the unusual circumstances exception to the 20-day

11  determination deadline, stating that it expected two or more CDC offices to have responsive documents

12  and further expected to receive voluminous records in response. *Id.* at ¶ 11. The CDC further stated that

13  Request One had been placed in CDC-FOIA's "complex processing queue," and asked Plaintiff to

14  narrow the scope of the request to help limit the number of responsive records. *Id.* Between January 30

15  and March 20, 2023, the CDC and Plaintiff engaged in narrowing discussions to help limit the scope of

16  Request One, as the current search was leading to tens of thousands of pages of responsive documents.

17  *Id.* at ¶¶ 11-16.

18  On May 16, 2023, the CDC informed Plaintiff that the search in response to Request One had

19  been completed and that the records were awaiting review. *Id.* at ¶ 18. The CDC could not provide an

20  estimated date of completion as it was operating under a backlog and processing all FOIA requests on a

21  first-in, first-out basis, which is a court-approved method for agencies with FOIA backlogs. *Id.* For

22  reference, the CDC FOIA office only had 13 analysts working through its backlog in March of 2023. *Id.*

23  The CDC received 1,951 FOIA requests in 2023 alone and processed 2,048 requests during that year. *Id.*

24  The CDC stated that it would send a response regarding completion of Request One "as soon as

25  possible." *Id.*

26  **FOIA Request Two:** HHS acknowledged receipt of Request Two on January 31, 2023,

27

28  [1] The Centers for Disease Control and Prevention/Agency for Toxic Substances and Disease Registry is an entity of the U.S. Department of Health and Human Services. Andoh Decl. at ¶ 2.

assigning it a tracking number and on February 1, 2023, and informed Plaintiff that the request was being referred to the CDC, which would provide a new acknowledgement and tracking number. *Id.* at ¶ 32. On March 9, 2023, Plaintiff requested an update from the CDC regarding acknowledgement of Request Two. *Id.* at ¶ 33. On that same day, the CDC acknowledged that it had received Request Two, but mistakenly understood that the records sought would be captured by Request One. *Id.* at ¶ 34. On March 15, 2023, the CDC sought additional information from Plaintiff to aid in the search, which Plaintiff provided on March 20, 2023. *Id.* at ¶¶ 35-36. On May 16, 2023, the CDC informed Plaintiff that the search in response to Request Two was completed, the records had completed an initial internal processing and that they were currently undergoing public disclosure notification pursuant to Executive Order 12600. *Id.* at ¶ 38. The CDC informed Plaintiff that it had contacted the submitter of the records that were responsive to Plaintiff's FOIA Request Two and had asked it to "identify information in its records deemed to be confidential commercial or financial material" and, thus, additional time would be needed to complete processing of the records. *Id.*

Despite this update from the CDC, Plaintiff filed the instant action on August 14, 2023. Dkt. No. 1.

**The FOIA Productions and Withholdings:**

**FOIA Request Two:** The FOIA requests were each assigned to a different FOIA analyst and FOIA Request Two was processed first. *Id.* at ¶ 24. On August 18, 2023, less than a week after the filing of the instant Complaint, and before the CDC had even been notified of the action, the CDC made its production to Plaintiff in response to Request Two, encompassing 391 pages, of which 172 pages were withheld in full under FOIA Exemption (b)(4). *Id.* at ¶ 39. For purposes of background, the CDC sometimes encounters records previously submitted by third parties that contain trade secrets or confidential commercial information potentially subject to FOIA Exemption (b)(4). *Id.* at ¶ 22. The CDC makes reasonable efforts to provide pre-disclosure notification ("PDN") to submitters of the receipt of FOIA requests for records in which the submitter may have a commercial interest, where disclosure "could reasonably be expected to cause substantial competitive harm," as required by Executive Order 12600. *Id.* Through the PDN process, the CDC solicits submitters' input on whether disclosure would likely cause substantial competitive harm. *Id.* Alongside the legal obligation of the

1   PDN process, it is also common practice to take into consideration the material these submitters want

2   withheld and their reasoning behind the withholdings. *Id.*

3       The material initially withheld under FOIA Exemption (b)(4) for Request Two was previously

4   provided by WHO to CDC under the expectation that it would remain confidential because the release of

5   the material would affect WHO's relationship with its member states and their national health agencies.

6   *Id.* ¶ 22. In October 2023, Plaintiff requested a *Vaughn* index for the material withheld pursuant to

7   Exemption (b)(4). *Id.* at ¶ 40. The CDC re-reviewed these records, and voluntarily conducted in-depth

8   research to determine if, as situations sometimes evolve, any of the information contained in the

9   withheld records had become publicly available. *Id.* at ¶ 41. In doing so, the analyst located studies and

10  other records that had been officially published that contained the same data and analysis that had been

11  withheld in the records for Plaintiff's FOIA Request Two. *Id.* Due to these findings, on November 7,

12  2023, the CDC sent a PDN to the WHO indicating that all information that had previously been withheld

13  under FOIA Exemption (b)(4) was now going to be lifted because that information was publicly

14  available. *Id.* Thereafter, the CDC voluntarily lifted those redactions and made the updated and final

15  release in response to Request Two on November 29, 2023. *Id.* at ¶ 42.

16      **FOIA Request One:** The CDC made the first of two releases in response to Request One on

17  December 22, 2023, encompassing 536 records (259 pages released in full, 211 pages released in part,

18  and 66 pages withheld), and the second release of the remaining five records on February 23, 2024. *Id.*

19  at ¶¶ 20, 25. As part of the productions, certain information was withheld pursuant to FOIA

20  Exemptions (b)(4) and (b)(5). *Id.* at ¶¶ 23 and 26.

21      In response to the first release, Plaintiff requested a *Vaughn* index on January 4, 2024. Dkt. 58 at

22  8. Following meet and confer with Plaintiff's counsel regarding the requested index, the CDC agreed to

23  provide a draft *Vaughn* index for redactions made pursuant to Exemptions (b)(4) and (5). Andoh Decl. at

24  ¶ 21. While preparing the draft *Vaughn* index, the FOIA analyst reviewed the underlying redactions and

25  noted that the redactions contained content on the same data and information as in the documents

26  previously withheld in response to Request Two. *Id.* at ¶ 24. Informed by the results of the research

27  conducted by the analyst working on Request Two, the analyst working on Request One determined that

28  there was enough similarity between some of the material involved in the two FOIA requests to warrant

1  the CDC using its discretion to lift some of the redactions in its production in response to Request One.

2  *Id.* As a result, when the CDC produced the draft *Vaughn* index, it lifted redactions on the material

3  found to be in the public domain or communications referencing that material and made supplemental

4  productions of that material on March 29, 2024. *Id.*

5         On April 16, 2024, Plaintiff requested additional information regarding withholdings that

6  remained in place on one record under Exemption (b)(4) and nine records under (b)(5) for which

7  Plaintiff thought additional segregability was warranted. *Id.* at ¶ 26. The withholdings pursuant to

8  Exemption (b)(5) were pre-decisional deliberative process materials containing agency communications

9  discussing opinions and recommendations for the Ebola outbreak. *Id.* While reviewing and segregating

10  the factual material within those 9 documents, the CDC made the discretionary decision to lift some of

11  the redactions made under Exemption (b)(5). *Id.* The lifted redactions related to wording that showed

12  that the information involved in these redactions was in fact FOIA Exemption (b)(5) "deliberative," as it

13  entailed words like "we estimate," "we assumed," "we should think about," etc. *Id.* The redaction made

14  pursuant to Exemption (b)(4) was kept in place, and Plaintiff did not further challenge that withholding

15  in this lawsuit. *Id.* The updated material with lifted redactions was produced to Plaintiff on April 26,

16  2024. *Id.*

17         On May 7, 2024, Plaintiff requested additional information withheld under Exemption (b)(4) and

18  (5) related to two records. *Id.* at ¶ 27. The information withheld pursuant to Exemption (b)(4) had been

19  withheld because WHO had requested that the CDC withhold that information pursuant to

20  Exemption (b)(4) during the pre-disclosure notification process and because it contained an evaluation

21  and assessment of a hospital in Sierra Leone that had a commercial interest in keeping information

22  regarding how it functioned during the Ebola outbreak confidential. *Id.* at ¶ 28. In subsequent

23  correspondence with WHO regarding Request Two, however, it was determined that material regarding

24  this specific hospital was in the public domain. *Id.* Therefore, the CDC made the discretionary decision

25  to release this material to Plaintiff. *Id.* The material withheld pursuant to Exemption (b)(5) remained in

26  place as the material related to the pre-decisional deliberative process of formulating budgetary

27  decisions and recommendations on cost estimates, and Plaintiff did not further challenge that

28  withholding in this lawsuit. *Id.* at ¶ 29.

1

## III.    LEGAL STANDARD

2    Congress did not intend for attorney's fees awards under FOIA to be automatic. *Church of*

3   *Scientology v. USPS*, 700 F.2d 486, 492 (9th Cir. 1983). Rather, FOIA plaintiffs "must present

4   convincing evidence that they are both eligible for an award of attorney's fees and that they are entitled

5   to such an award." *Rosenfeld v. U.S. Dep't of Justice*, 903 F. Supp. 2d 859, 865 (N.D. Cal. 2012)

6   (cleaned up) (emphasis added); *Or. Nat'l Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009).

7   First, the eligibility prong of the FOIA fees analysis provides that "[t]he court may assess against the

8   United States reasonable attorney fees and other litigation costs reasonably incurred in any case under

9   this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i); *see*

10  *Morley v. CIA*, 894 F.3d 389, 391 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 2756 (2019) (per curiam)

11  ("the FOIA attorney's fees statute provides that the district court 'may' award fees to a prevailing

12  plaintiff—and not 'must' or 'shall' award fees"). Second, and relevant here, to recover reasonable

13  attorney's fees, a FOIA litigant must also show that he is "entitled" to recovery given the particular

14  circumstances of his case. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 525–26 (D.C. Cir.

15  2011). Entitlement is a discretionary inquiry in which the court considers several equitable factors and

16  whether the government's withholding had a reasonable basis in law. *Hiken v. Dep't of Def.*, 836 F.3d

17  1037, 1044 (9th Cir. 2016).

18    Finally, if a plaintiff demonstrates both eligibility for and entitlement to fees, it still must

19  establish that the fee it seeks is reasonable. *See Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984) (a

20  "district court is expressly empowered to exercise discretion in determining whether an award is to be

21  made and if so its reasonableness").

22

## IV.    ARGUMENT

23    **A.    Plaintiff Is Not Entitled To An Award Of Attorneys' Fees Because Defendants Had
        A Reasonable Basis In Law For Their Positions**[2]

24

25    To support the argument that it is entitled to attorneys' fees, Plaintiff asserts that "Defendants

26  have no colorable basis in law for denying USRTK access to the records sought by the FOIA Requests."

27

28
_____

[2] For the purposes of this motion, Defendants do not contest eligibility. Dkt. No. 57.

Dkt. No. 58 at 15. However, there is no evidence that Defendants ever denied Plaintiff access to records to which it was entitled under the FOIA in this case, much less that Defendants acted in bad faith by so doing. Indeed, Plaintiff asserts that Defendants did not comply with FOIA's 20-day determination deadline, failed to provide completion date estimates, failed to produce records for 8 months, and lifted redactions that were identified as exempt, but none of the grounds raised by Plaintiff demonstrates an entitlement to fees.

Even if a FOIA plaintiff is eligible for fees, it is not necessarily entitled to recover fees; "the district court has discretion to determine whether the plaintiff is entitled to fees." *Or. Nat'l Desert Ass'n*, 572 F.3d at 614 (citation and footnote omitted); *see also Church of Scientology*, 700 F.2d at 489 (a finding of eligibility "does not automatically entitle the plaintiff to attorney's fees"); *Waage v. IRS*, 656 F. Supp. 2d 1235, 1238 (S.D. Cal. 2009) (eligibility and entitlement "are separate considerations governed by their own standards"). To evaluate whether the plaintiff is entitled to an award, the court considers equitable factors, frequently focusing on four factors:  (1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of records had a reasonable basis in law. *See Church of Scientology*, 700 F.2d at 492-94; *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008) (quoting *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)). Recent Ninth Circuit authority teaches that the fourth "reasonable basis in law" factor can tip the balance in favor of denying fees even when the other three factors favor fees. *See Schoenberg v. F.B.I.*, 2 F.4th 1270, 1277-78 (9th Cir. 2021) ("True, the first three factors favored fees and only the fourth disfavored fees. But the district court acted within its discretion to deny [plaintiff] fees."). As held by the *Schoenberg* court, "the four factors are not equally weighted—they each involve a sliding scale, allowing one or more factors to outweigh the others." *Id*. at 1278.

To establish a reasonable basis in law, an agency must have had "a colorable basis in law" for its position, even if ultimately not correct, and that its position was not taken to frustrate the requester. *Schoenberg*, 2 F.4th at 1276 (upholding denial of fees even though plaintiff was a prevailing party eligible for fees under FOIA). "[T]he reasonable-basis-in-law factor is intended to weed out those cases in which the government was recalcitrant in its opposition to a valid claim or otherwise engaged in

obdurate behavior." *Tax Analysts*, 965 F.2d at 1097 (internal quotation marks omitted). Thus, while this factor may weigh in favor of a fees award "if the [refusal to produce] appeared to be merely to avoid embarrassment or frustrate the requester," a court should "not award fees where the government's [position] had a colorable basis in law." *Church of Scientology*, 700 F.2d at 492 n. 6 (quoting S. Rep. 93-854, 93rd Cong. 2nd Sess. 19 (1974)). Moreover, failure to comply strictly with the statutory timing requirements is, in itself, insufficient to support a fee award. *Castillo v. United States Customs*, No. 23-cv-03110-RS, 2024 WL 1182865, at *4 (N.D. Cal. Mar. 19, 2024); *see also Schoenberg*, 2 F.4th at 1276 (tying entitlement test to withheld documents, not routine delay).

Plaintiff claims that Defendants failed to comply with the 20-day determination deadline and delayed in producing documents. Dkt. No. 58 at 15. But before Plaintiff filed this lawsuit, the CDC acknowledged receipt of both requests, engaged in multiple rounds of narrowing discussions with Plaintiff and sought clarification on the information requested. Andoh Decl. at ¶¶ 10-18, 32-38. Specifically as to Request Two, the CDC informed Plaintiff that it had completed initial internal processing and was awaiting a response from a third party pursuant to mandatory pre-disclosure notification procedures. *Id.* at ¶ 38. The mandatory pre-disclosure notification procedures were completed and the CDC released the records in Request Two immediately thereafter (just one week after Plaintiff filed this lawsuit). *Id.* at ¶ 39. The CDC was obligated to engage in the pre-disclosure notification procedures pursuant to Executive Order 12600, and it was not authorized to release the records responsive to Request Two prior to completing that process. Any resulting delay in the CDC's release of records responsive to Request Two thus had a reasonable basis in law, and Plaintiff cannot show any entitlement to fees with respect to Request Two as a result of a purported delay in releasing those records. Simply stated, the CDC could not have released those records earlier.

With respect to Request One, the CDC informed Plaintiff—before Plaintiff filed this lawsuit— that it had completed its search for responsive records but could not provide a completion date for processing due to a significant backlog of FOIA requests. *Id.* at ¶ 18. The agency's backlog was simply the result of limited agency resources, and any delay in releasing the records was not obdurate or intended to frustrate the requester—the CDC instead released the records to Plaintiff as soon as it was able given resource constraints. *Id.* at ¶ 20. Where a lawsuit is triggered by a delay in the processing of a

request rather than an improper withholding of documents, an award of fees is not warranted under the reasonableness factor in the absence of "obdurate behavior or bad faith." *Ellis v. United States*, 941 F. Supp. 1068, 1080 (D. Utah 1996) (collecting cases); *Simon v. United States*, 587 F. Supp. 1029, 1032-33 (D.D.C. 1984) (declining to impose fee award despite "sluggish agency response" without evidence of bad faith; "while an agency's failure to meet deadlines is not to be condoned, it does not warrant an award of fees in and of itself"); *Castillo*, 2024 WL 1182865, at *4 (finding that mere "fail[ure] to comply strictly with the statutory timing requirements . . . is insufficient to support a fee award"); *see also Schoenberg*, 2 F.4th at 1276. The circumstances of the CDC's conduct in this case stand in direct contrast to the conduct in *Yonemato v. Dep't of Veterans Affairs*, in which the agency withheld documents over the course of seven years, justified its withholdings by a series of shifting exemptions, and took legal positions that it "knew were tenuous or would ultimately abandon." 549 F. App'x 627, 630 (9th Cir. 2013). Here, by contrast, the CDC has "never refused to release documents or asserted a frivolous legal defense to plaintiffs' action." *Simon*, 587 F. Supp. at 1032. The CDC instead affirmatively told Plaintiff that it was processing responsive records, but the CDC could not release those records faster as a result of limited agency resources.  Nor has Plaintiff proffered *any* evidence that the CDC was obdurate or acted in bad faith in its response to Request One.

Plaintiff also fails to demonstrate that the CDC's withholdings in response to both Request One and Request Two did not have a "reasonable basis in law." To establish that a withholding was reasonable, the Court must find that an agency had "a colorable basis in law" for its position, even if ultimately not correct, and that its position was not taken to frustrate the requester. *See Schoenberg*, 2 F.4th at 1276. Here, the CDC had a reasonable basis in law for its withholdings under Exemptions (b)(4) and (5). Under the FOIA, the following documents are exempt from disclosure: "(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential; (5) inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. 522(b)(4) and (5).

The CDC had a reasonable basis for withholding material pursuant to Exemption (b)(4) because the information had been identified as confidential during the pre-disclosure process by WHO and had been originally provided to the CDC by WHO under the expectation that it would remain confidential, and the understanding that the release of this information would have affected WHO's relationship with its member states and their national health agencies.[3] Andoh Decl. at ¶ 23. Such material is exactly the type of information contemplated by the Exemption. *See Pomares v. Dep't of Veterans Affrs.*, 113 F4th 870, 882 (9th Cir. 2024) ("Given the practicalities at play in this context, courts routinely consider information from third parties on which an agency relied to assert Exemption 4."); *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 435 (2019) (finding assertion of Exemption 4 proper where the government promised retailers it would keep information private to induce participation in relevant program). Moreover, the CDC was entitled to rely on WHO's assertion that the materials were confidential when the CDC originally withheld those materials under Exemption (b)(4), and the CDC was not obligated to conduct additional research into the accuracy of WHO's representations. *See, e.g.*, *Pomares*, 113 F.4th at 882 ("Exemption 4, by its nature, requires agencies to rely on assertions by the third parties that provided the information sought in a FOIA request. Agencies cannot determine, on their own, whether a person who provided information to the government treated that information as confidential."); *Citizens Com'n on Human Rights v. Food and Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (FDA could rely on third party that it had obtained materials from to help prepare *Vaughn* index for Exemption 4 withholdings as FDA made ultimate decision on what information to withhold); *Center for Investigative Reporting v. U.S. Customs and Border Protection*, 436 F. Supp. 3d 90, (D.D.C. 2019) (Exemption 4 can be supported by indicating agency reached understanding with submitter that information would be held in confidence and not publicly divulged).

Therefore, the CDC was permitted to rely WHO's prior representation that the information WHO had submitted should be held in confidence and not publicly disclosed, and the CDC could have stood on its withholdings of that (b)(4) material. Notwithstanding the fact that the CDC had a colorable basis in the law for its original (b)(4) withholdings, the CDC's FOIA analyst went above and beyond the

---

[3] *See* infodisclosurepolicy.pdf: WHO's disclosure policy explaining why they consider information from member states confidential.

1  requirements of the FOIA and conducted additional in-depth research to determine that some of the

2  withheld information was now in the public domain. Andoh Decl. at ¶ 41. The CDC then took extra—

3  and not statutorily required—steps to (1) notify WHO of the public nature of this information and (2)

4  make a discretionary release of this information to Plaintiff. Andoh Decl. at ¶¶ 24, 41. Recent and

5  controlling Ninth Circuit law demonstrates that the CDC had a reasonable basis in law to rely on

6  WHO's representations when it withheld this material and the CDC was not required to undertake the

7  independent research that it conducted here. *Pomares*, 113 F.4th at 882. The fact that the CDC did so

8  simply demonstrates the CDC went beyond its obligations under the FOIA and that Plaintiff received

9  records that it otherwise was not entitled to receive under the FOIA.

10  Likewise, the CDC had a reasonable basis for withholding communications pursuant to

11  Exemption (b)(5). *Id*. at ¶ 26. That Exemption is critical to allow agencies to explore possibilities

12  outside of public scrutiny. *Lahr v. National Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009). "The

13  purpose of the deliberative process privilege 'is to prevent injury to the quality of agency decisions' by

14  ensuring that the 'frank discussion of legal or policy matters' in writing, within the agency, is not

15  inhibited by public disclosure." *Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1089, 1092

16  (9th Cir. 1997) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975)). Upon reviewing

17  the withheld information to determine if certain portions could be further segregated for disclosure, the

18  CDC used its discretion to remove some of the redactions. The lifted redactions demonstrate that the

19  information originally withheld was in fact pre-decisional and deliberative and thus properly withheld

20  under Exemption (b)(5), as it entailed words like "we estimate," "we assumed," "we should think

21  about," etc., and related to potential recommendations on dealing with the Ebola outbreak. Once again,

22  the CDC voluntarily decided to produce material to Plaintiff that it was under no obligation to release

23  under the FOIA.  The fact that the CDC made a discretionary release of that properly withheld

24  information does not show that the CDC's original withholdings lacked a reasonable basis in the law (as

25  Plaintiff must demonstrate before it is entitled to fees), but rather that Plaintiff once again received

26  records it had no right to under the FOIA.

27  In sum, the record in this case demonstrates not that the CDC was obdurate, acted in bad faith, or

28  that its conduct was intended to frustrate Plaintiff.  Instead, the evidence demonstrates not only that the

1   CDC had a had a colorable basis in the law for all its actions, but that the CDC went well beyond its

2   statutory duties to provide Plaintiff with records that Plaintiff had no right to under the FOIA. Plaintiff

3   thus does not demonstrate an entitlement to fees, and this motion should be denied.

### A. Plaintiff's Request For Attorney's Fees And Costs Should Be Reduced To Reflect The Simple Nature Of The Litigation

6       If the Court determines that Plaintiff has established eligibility for and entitlement to fees, the

7   Court may grant reasonable attorneys' fees. However, courts are empowered to adjust a FOIA litigant's

8   fees and costs downward based on a host of factors going to the reasonableness of those fees and costs.

9   Ultimately, the burden rests with the party requesting fees to demonstrate that their time records are

10  detailed and their calculations and the hours claimed were reasonably expended. *Public.Resource.org v.*

11  *U.S. Internal Revenue Serv.*, No. 13-cv-02789-WHO, 2015 WL 9987018, at *7 (N.D. Cal. Nov. 20,

12  2015). And where "documentation of hours is inadequate" the district court may reduce the award

13  accordingly. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 436 (1983). As explained below, Plaintiff has not

14  met its burden on reasonableness in numerous ways and, therefore, even if the Court finds that Plaintiff

15  is entitled to fees, it nevertheless should adjust Plaintiff's requested fees downward.

16      In this case, in which the parties resolved every substantive dispute amicably, without Court

17  intervention, and where Plaintiff did not file a single motion until this fees motion, Plaintiff is asking the

18  Court to award an astounding $141,115.75 in attorneys' fees and costs. Plaintiff's fees-on-fees (which

19  continue to grow through these proceedings) already significantly exceed the amount that Plaintiff seeks

20  for the merits portion of this litigation (i.e., approximately $61,640.05 spent on the merits and

21  (currently) $79,475.10 spent on settlement and the fees motion). Additionally, Judge Hixson found just

22  this month that an award for half the amount requested by Plaintiff here was reasonable in a more

23  complex, heavily contested FOIA matter brought by this exact same Plaintiff and this exact same

24  counsel. *See USRTK v. United States Department of Defense, et al.* ("*USTRK v. DOD*"), No. 3:23-cv-

25  02956-TSH (N.D. Cal.), Dkt. 50 (awarding $74,312.88 in fees and $688.96 in costs). For these reasons,

26  as explained in more detail below, Plaintiff has not met its burden of justifying anything approximating

27  the requested fees and costs award.

28

**1. Plaintiff's Fees Demand And Claimed Hourly Rates Are Unreasonable When Compared to *USRTK v. DOD***

As noted above, on March 19, 2025, Judge Hixson issued an order on a FOIA fees motion involving the same Plaintiff and same Plaintiff's counsel. *USRTK v. DOD*, at Dkt. 50. In that case, USRTK sought compensation for work for approximately 31.47 hours on the merits of the case and 67.8 hours associated with attorneys' fees, for a total claimed fees and costs award of $81,821.83. *Id.* at 27-28. Judge Hixson found some of the billed time unreasonable (and many of those unreasonable billing practices are at issue in this case as well, as demonstrated in more depth below) and thus reduced USRTK's award to $74,312.88 in attorneys' fees and $688.96 in costs. *Id.* at 34. At the very least, Judge Hixson's March 19, 2025 order offers a nearly identical, and very recent, reference point for an award of reasonable attorneys' fees and costs to this exact Plaintiff and counsel. Nevertheless, Plaintiff now seeks almost *double* that amount for an even more straight-forward, non-adversarial FOIA case. Additionally, the motion Plaintiff filed in *USRTK v. DOD* demonstrates that Plaintiff's requested billing rates are significantly inflated here, —without any explanation for why.

**a. Plaintiff's Billing Is Excessive Given The Duplicative Nature Of This Case Compared To *USRTK v. DOD***

The fact that Plaintiff and its counsel recently litigated a FOIA fees dispute is informative as to how much time is reasonable for counsel to dedicate to the instant fees motion. A review of the fees motions filed in both matters reveals that entire portions and pages of the instant motion are identical to those filed in the first USRTK case, including the standard of review, entitlement, and reasonableness of fees sections. *Compare* Dkt. 58 to *USRTK v. DOD*, at Dkt. 33. Furthermore, unlike in *USRTK v. DOD*, Defendants here agreed in advance not to contest eligibility (Dkt. 57), disposing of the need for Plaintiff to draft an argument on that issue. Additionally, both motions rely on identical declarations from Richard Drury. *Compare* Dkt. 61 to *USRTK v. DOD*, at Dkt. 38. But notwithstanding the efficiencies that Plaintiff's counsel should have achieved through these close-in-time and nearly identical filings, Plaintiff's counsel is claiming approximately $27,510 in billing in drafting the fees motion in this case, which appears to be near the exact same amount Plaintiff claimed in *USRTK v. DOD*. *See* Dkt. 58 at 17 and *USRTK v. DOD*, Dkt. 46 at Ex. D

1    This same scenario arose in *Rosenfeld v. United States Dept. of Justice*, in which the court found

2    that the plaintiff had "grossly inflated" their fees-on-fees demand where the plaintiff had brought a fees

3    motion contemporaneously in another FOIA matter. 903 F. Supp. 2d 859, 879 (N.D. Cal. Oct. 17, 2012).

4    In that case, the court noted that most of the arguments in the first-filed motion were also made in the

5    second, and yet the plaintiff asked for $85,000 to bring the fees motion in the first action and $50,000 in

6    the second. *Id.* The *Rosenfeld* court found that "[g]iven the substantial degree of overlap between these

7    two fee motions, and the corresponding efficiencies Plaintiff's counsel should have realized in preparing

8    and defending these motions against the *same defendant* on the *same type of legal claim*, the Court finds

9    Plaintiff's requested fee award to be unreasonable and inflated." *Id.* (emphasis in original).  The

10   duplicative fees-on-fees claims in this case and *USRTK v. DOD* are even more striking than the "grossly

11   inflated" fees in *Rosenfeld*.  Here, the two USRTK cases share the same Plaintiff, legal claims,

12   arguments, supporting declarations, and Plaintiff's counsel, but Plaintiff's counsel seeks almost the

13   exact same amount in fees for the fees motion in this second case. In other words, Plaintiff's counsel did

14   not realize *any* efficiencies.  *C.f.*, *Rosenfeld*, 903 F.Supp.2d at 879 (even the "grossly inflated" fees in

15   the second *Rosenfeld* matter reflected $35,000 in efficiencies realized in the second fees motion).  In

16   effect, Plaintiff and its counsel are double billing for substantially identical fees motion practice in two

17   cases.

**b.  Plaintiff's Claimed Hourly Rates Are Excessive**

19   Plaintiff and its counsel supported the fees motion in *USRTK v. DOD* with a declaration by

20   Richard T. Drury regarding counsel's reasonable hourly rates. *USRTK v. DOD*, at Dkt. 38. The *only*

21   difference between Mr. Drury's declaration in support of that case and the one filed here is the alleged

22   reasonable hourly rates assigned to each attorney.  In *USRTK v. DOD*, Mr. Drury opined that the

23   following hourly rates were reasonable:  $878 for Ms. Doughty (an attorney of 20 years), and $777 for

24   Lily Rivo (an attorney of 19 years). *USRTK v. DOD*, Dkt. 38 at 7-8. Judge Hixson approved those rates

25   in the *USRTK v. DOD* matter. *USRTK v. DOD*, Dkt. 50 at 18.  In the FOIA fees motion before this

26   Court, however, Mr. Drury opines that hourly rates of $1,141 for Ms. Doughty and Rae Lovko (an

27   attorney of 21 years), and $948 for Ms. Rivo and Ms. Blome (an attorney of 17 years) are reasonable.

28   Dkt. 61 at 7-8. There is nothing in Plaintiff's motion or Mr. Drury's declaration that supports a rate

1    increase over what was just awarded by Judge Hixson for these same attorneys just earlier this month.

2    Based on Judge Hixson's finding of reasonable rates on March 19, 2025, Greenfire Law's own recent

3    representations to Judge Hixson, and Plaintiff's own expert's opinion in *USRTK v. DOD*, the rates

4    sought here are excessive and should be reduced, at minimum, to the amounts Judge Hixson found to be

5    reasonable.

### 2.  Plaintiff's Billing For This Matter Is Excessive On Its Own

7    Regardless of Plaintiff's work in *USRTK v. DOD*, Plaintiff's billing in this matter remains

8    excessive. If the Court determines that a fee award is warranted, it must ensure that the fees awarded are

9    reasonable. *Hensley*, 461 U.S. at 433. In this case, however, Plaintiff's requested fees are unreasonable.

10   Indeed, work is only compensable when it "was what one would expect of a lawyer working for a client

11   that could afford its efforts but that was not indifferent to the cost." *Balla v. Idaho*, 677 F.3d 910, 921

12   (9th Cir. 2012). Reasonably expended time is generally time that "could reasonably have been billed to a

13   private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *see also Herrington*

14   *v. Cnty. of Sonoma*, 883 F.2d 739, 747 (9th Cir. 1989) (noting that the identification of "duplication of

15   effort by the co-counsel assigned to [a] case . . . necessitates some reduction of the hours claimed"). This

16   requires the exercise of "sound billing judgment" regarding the number of hours worked, and courts will

17   exclude hours that were not "reasonably expended," such as those incurred from overstaffing, or "hours

18   that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433. Should this Court

19   award fees to Plaintiff, it should make appropriate deductions to account for excessive and

20   noncompensable hours.

21   Plaintiff billed 13.1 hours ($12,418.80) solely on the drafting of a straightforward FOIA

22   complaint. Dkt. 59-1 (entries on 7/14/23, 7/17/23, 7/18/23, 7/20/23, 7/21/23, 7/24/23, 8/3/23, 8/4/23).

23   The number of hours and the amount billed for those hours is excessive, especially for experienced

24   counsel who routinely file very similar, formulaic FOIA complaints. *See Brown v. Mandarich Law*

25   *Group, LLP*, No. 13-cv-04703-JSC, 2014 WL 1340211, at *4 (N.D. Cal. Apr. 2, 2014) (2.2 hours for

26   drafting complaint considered reasonable); *Electronic Frontier Foundation v. Office of Dir. of Nat.*

27   *Intelligence*, No. 07-cv-05278-SI, 2008 WL 2331959, at *5 (N.D. Cal. June 4, 2008). Indeed, a

28   comparison of the complaint in this case to the one filed in *USRTK v. DOD* demonstrates that nearly the

1   entire complaint outside the statement of facts was copied and pasted verbatim. *Compare* Dkt. 1 to

2   *USRTK v. DOD* at Dkt. 1. Nevertheless, Plaintiff claims fees for over $12,000 of work updating what

3   amounts to the factual background section of its FOIA complaint template.

4        Additionally, Plaintiff seeks fees for 11.9 hours ($11,725.10) of work for "court mandated

5   conferences," but these charges reflect routine litigation tasks such as reviewing and filing form

6   stipulations (see entries on 11/1/23, 11/2/23), reviewing the docket and court orders on case

7   management statements (see entries on 11/7/23, 11/8/23, 2/28/24, 3/8/24, 10/23/24), and internal

8   communications regarding calendaring case management conference dates (see entries on 4/19/24,

9   5/8/24, 8/12/24). Dkt. 59-1. These claimed bills are excessive, both in the amount of time billed and the

10  rate charged for these non-complex tasks. *Hensley*, 461 U.S. at 433; *Welch*, 480 F.3d at 946.

11       Further billing inefficiencies are clear from the inordinate amount of time spent on case

12  strategizing—a result of overstaffing on this simple FOIA matter by alleged highly experienced FOIA

13  litigation attorneys. Plaintiff billed 26.4 hours (approximately $26,050.10) to strategy and analysis.

14  Dkt. 59 at 6. Standing alone, 8.4 of these hours were spent conferring between high-billing attorneys

15  (see, *e.g.* Dkt. 59, entries for 10/23/23, 10/31/23, 12/19/23, 1/2/24, 1/17/24, 1/23/24, 1/31/24, 2/7/24,

16  2/13/24, 3/12/24, 4/9/24, 4/15/24, 4/23/24, 5/8/24, 5/14/24, 9/24/24). The amount Plaintiff has billed in

17  this matter toward strategy is over six times the amount Judge Hixson just found reasonable in *USRTK v.*

18  *DOD*. *See* Dkt. 50 at 28-29.

19       Finally, Plaintiff has billed 1.6 hours ($964.80) for noncompensable administrative work, such as

20  downloading of documents (entry on 2/5/25), calendaring (entries on 4/22/24, 1/22/25, 3/5/25), and

21  docketing (entries on 11/3/23, 2/11/25, 2/28/25). Dkt. 59. Purely administrative tasks such as

22  calendaring, docketing, and scheduling are not compensable as attorney fees. *Campbell v. Nat'l*

23  *Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1105 (N.D. Cal. 2010) (citing *Davis v. City and Cnty. Of*

24  *San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) *vacated in part on other grounds* at 984 F.2d 345

25  (9th Cir. 1993)). Thus, the above entries should be struck, assuming Plaintiff recovers anything in this

26  case.

27

28

### a. Plaintiff's Fees-On-Fees Demand Is Excessive

Although the fees requested by Plaintiff for the merits phase of this lawsuit are excessive, Plaintiff's demand for post-merits fees-on-fees is even more striking. Indeed, Plaintiff claims fees for 52.804 hours (approximately $51,965.10) of work for "settlement/non-binding ADR" alone. Dkt. 59-1. In other words, Plaintiff billed over 50 hours to exchange a handful of settlement demands with Defendants and prepare for and attend one half day settlement conference. This billing is excessive and inconsistent with what other courts have found to be reasonable time spent on settlement negotiations. *See Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172 (D.D.C. 2018) (11.9 hours of work toward settlement of FOIA fees dispute reasonable); *Weisberg v. U.S. Dep't of Justice*, No. CIV.A. 75-1996 WL 11984, at *11 (D.D.C. May 28, 1987) (16 hours on settlement negotiations reasonable where 83.4 hours was spent on merits portion). The time spent in preparation for the settlement conference is especially significant because it included entries for compilation and analysis of billing records (entries on 5/16/24, 5/17/24, 7/1/24, 2/5/25), review of declarations (entries on 1/27/25, 1/28/25), and in one entry "review of motion for fees" (entry on 1/27/25). Dkt. 59-1. All of these are tasks that Plaintiff separately (and duplicatively) claims were incurred while preparing the present motion. *See, e.g.*, Dkt. 59-1, entries on 3/4/25, 3/6/25, 3/7/25, 3/11/25, 3/12/25). Thus, in addition to being excessive, at least some of these claimed fees are duplicative and should be reduced.

Nor can Plaintiff argue that incurring nearly 25 hours (or approximately $27,510) on a fees motion is reasonable (Dkt. 59-1), especially where Plaintiff's counsel claim to be experienced attorneys, and as discussed above, this same counsel had already prepared a substantially identical fees motion in the FOIA matter before Judge Hixson.

Taken together with the other post-merits billing, Plaintiff's fees-on-fees demand eclipses Plaintiff's demand for the merits phase of the case. Contrary to the Supreme Court's admonition in *Hensley* to avoid "a second major litigation," 461 U.S. at 437, Plaintiff's fees request in this insignificant FOIA litigation has completely overshadowed the substantive merits of the case. While Defendants do not contend that hours spent on a fees motion are noncompensable (assuming that the Court finds that Plaintiff is entitled to fees in the first place), the relative proportion of time devoted to this task, following the uncontested, simple litigation, "creates the appearance of the attorneys' fees tail wagging

the FOIA dog." *Elec. Frontier Found. v. Dept. of Homeland Security*, No. 12-cv-5580, 2014 WL 6469122, at *6 (N.D. Cal. Nov. 18, 2014).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees should be denied. If the Court finds that Plaintiff is entitled to an award of fees, the award should be substantially reduced to include only those reasonable fees and costs, calculated at a reasonable hourly rate that the Court determines appropriate in the exercise of its discretion.

DATED: March 25, 2025                    PATRICK D. ROBBINS
                                         Acting United States Attorney


                                         */s/ Molly A. Friend*
                                         MOLLY A. FRIEND
                                         Assistant United States Attorney
                                         Attorneys for Defendant