Rachel S. Doughty (Cal. Bar No. 255904)
Lily A. Rivo (Cal Bar No. 242688)
GREENFIRE LAW, PC
2478 Adeline Street, Suite A
Berkeley, CA 94703
Ph/Fax: (510) 900-9502
Email: RDoughty@greenfirelaw.com
LRivo@greenfirelaw.com

*Attorneys for Plaintiff US Right to Know*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| US RIGHT TO KNOW, a California Non-Profit Corporation,<br><br>Plaintiff,<br>vs.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES and the UNITED STATES CENTERS FOR DISEASE CONTROL AND PREVENTION,<br><br>Defendants. | Case No.: 3:23-cv-04120-PHK<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br><br>Hearing Date: April 18, 2025<br>Time: 1:00 p.m.<br>Judge: Hon. Peter H. Kang<br>Dept: Floor 15, Courtroom F |

## TABLE OF CONTENTS

I.   Plaintiff demonstrates entitlement to fees and costs under the FOIA. .................................. 1

   A.   Defendants lack a reasonable basis in law for withholding records ........................... 1

      1.   Defendants have failed to demonstrate exceptional circumstances. .......................... 2

      2.   No reasonable basis in law has been demonstrated regarding Defendants' reliance on FOIA exemptions. ................................................................................................. 3

   B.   USRTK's request for fees and costs is reasonable. ......................................................... 8

      1.   USRTK's rates are reasonable. ................................................................................ 10

      2.   Plaintiff's billing is not excessive. .......................................................................... 11

      3.   Plaintiff substantially reduced fees. ........................................................................ 11

      4.   Plaintiff is entitled to fees-on-fees. ......................................................................... 12

II.  Conclusion ......................................................................................................................... 13

# TABLE OF AUTHORITIES

<u>Cases</u>

*Angel Jet Servs., LLC v. Giant Eagle, Inc.*, No. CV-09-01489-PHX-SRB, 2013 U.S. Dist. LEXIS
193350 (D. Ariz. 2013) ................................................................................................ 16

*Besson v. United States DOC*, 480 F. Supp. 3d 105 (D.D.C. 2020) ...................................... 8

*Chesapeake Bay Found. v. United States Dep't of Agric.*, 304 U.S. App. D.C. 167, 11 F.3d 211
(1993) .......................................................................................................................... 5

*Cohodes v. United States Dep't of Just.*, 2025 WL 572888, (N.D. Cal. Jan. 24, 2025) ...................... 5

*Cottone v. Reno*, 193 F.3d 550 U.S. App. D.C. 270 (D.C. Cir. 1999) ..................................... 7

*Ctr. for Investigative Reporting v. United States DOL*, No. 3:22-cv-07182-WHA, 2023 U.S. Dist.
LEXIS 228637 (N.D. Cal. 2023) ............................................................................. 7, 8, 9

*Cuneo v. Rumsfeld*, 180 U.S. App. D.C. 184, 553 F.2d 1360 (1977) .................................... 12

*Customs & Int'l Trade Newsletter v. United States Customs & Border Prot.*, 588 F. Supp. 2d 51
(D.D.C. 2008) ............................................................................................................... 8

*Davis v. U.S. Dep't of Just.*, 968 F.2d 1276 U.S. App. D.C. 405 (D.C. Cir. 1992) ...................... 8

*Davy v. CIA,* 57, 550 F.3d 1155 (2008) ............................................................................ 7, 12

*Department of Air Force v. Rose*, 425 U.S. 352 (1976) .................................................... 6

*Donham v. DOE*, 192 F. Supp. 2d 877 (S.D. Ill. 2002) ........................................................ 5

*Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27 (D.D.C. 2016) ... 7

*EPA v. Mink*, 410 U.S. 73, 87-88, 93 S. Ct. 827 (1973) ...................................................... 11

*FBI v. Abramson*, 456 U.S. 615 (1982) .......................................................................... 6

*Federal Open Market Committee v. Merrill*, 443 U.S. 340 (1979) .......................................... 8

*Gov't Accountability Project v. HHS*, 568 F. Supp. 2d 55 (D.D.C. 2008) .......................... 5, 9

*Guerrero v. Pendelton*, No. 5:22-cv-00931-WLH-KK, 2024 U.S. Dist. LEXIS 165625 (C.D. Cal.
2024) .......................................................................................................................... 16

*Hiken v. Dep't of Def.*, 836 F.3d 1037 (9th Cir. 2016) ........................................................ 4

*Hum. Rights Def. Ctr. v. Cnty. of Napa,* 2021 WL 1176640 (N.D. Cal. Mar 28, 2021) ............... 15

1  *Kopp v. United States Secret Serv.*, 2019 WL 2327933 (N.D. Cal. May 31, 2019) .......................... 15

2  *Lacy v. United States Dep't of State*, No. 8:22-cv-01065-DOC-KES, 2023 U.S. Dist. LEXIS 195381

3     (C.D. Cal. 2023)............................................................................................................................. 6

4  *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005)............. 5, 6

5  *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ........................................................ 14

6  *N.Y. Pub. Interest Research Grp. v. United States EPA*, 249 F. Supp. 2d 327 (S.D.N.Y. 2003) .... 7, 9

7  *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132 (1975) ....................................................................... 11

8  *O'Neill, Lysaght & Sun v. D.E.A.*, 951 F. Supp. 1413 (C.D.Cal.1996) ............................................... 5

9  *Providence Journal Co. v. Convention Ctr. Auth.*, 774 A.2d 40 (R.I. 2001)...................................... 8

10 *Public Citizen Health Research Group v. Food and Drug Admin.*, 704 F.2d 1280

11     (D.C. Cir. 1983) ......................................................................................................................... 7, 8

12 *Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859 (N.D. Cal. 2012) ............................................ 5

13 *Seife v. United States FDA*, 43 F.4th 231 (2d Cir. 2022)................................................................. 7, 8

14 *U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991) ................................................................................ 7

15 *Wiggins v. United States DOJ*, Civil Action No. 20-3565 (ACR), 2025 U.S. Dist. LEXIS 53052

16     (D.D.C. 2025) .............................................................................................................................. 11

17 Statutes

18 5 U.S.C. § 552(a)(6)(A) ....................................................................................................................... 5

19 5 U.S.C. § 552(a)(6)(C) .................................................................................................................... 5, 6

20 5 U.S.C. § 552(b)(4) ............................................................................................................................. 7

21 5 U.S.C. § 552(b)(5) ........................................................................................................................... 11

22 5 U.S.C. §552 ..................................................................................................................................... 11

23

24

25

26

27

28

1    Plaintiff US Right to Know ("USRTK") respectfully submits the following Reply in support

2    of Plaintiff's Motion for Attorneys' Fees and Costs ("Motion"). ECF 58. Through this Reply,

3    Plaintiff addresses Defendants' incorrect assertions that (1) Defendants had a reasonable basis in

4    law for their actions, and (2) Plaintiff's request is unreasonable and excessive. ECF 64, pp. 6-17.

5    Plaintiff also now requests fees associated with having to write the Reply. Declaration of Lily Rivo

6    ISO Plaintiff's Motion for Fees ("Rivo Decl."), ¶8 and Exh. 1.

7    Had Defendants simply complied with FOIA at the time they originally received USRTK's

8    FOIA Requests, this litigation would have been avoided. Instead, Defendants were dilatory in their

9    communications with USRTK and produced no records until Plaintiff filed the complaint in this

10   case. Yet now, in opposition to the Motion, Defendants attempt to paint their actions as being

11   reasonable, with them voluntarily deciding to produce records not required by law. As addressed

12   herein, such a claim is completely without merit.

13   Defendants also contend Plaintiff's request is unreasonable because of this case's "simple

14   nature." This argument ignores the reality that all of Plaintiff's fees and costs were incurred only

15   because of Defendants' delay and failure to comply with FOIA.

16   **I.    Plaintiff demonstrates entitlement to fees and costs under the FOIA.**

17       **A.    Defendants lack a reasonable basis in law for withholding records.**

18   In making the "entitlement" determination, courts consider four criteria: "(1) the public

19   benefit from the disclosure, (2) any commercial benefit to the plaintiff resulting from the disclosure,

20   (3) the nature of the plaintiff's interest in the disclosed documents, and (4) whether the

21   government's withholding of the records had a reasonable basis in law." *Hiken v. Dep't of Def.*, 836

22   F.3d 1037, 1044 (9th Cir. 2016) (citation omitted). Defendants do not oppose Plaintiff's Motion on

23   the first three factors, but as to the fourth factor, Defendants assert their delay in response had a

24   reasonable or colorable basis in law because (a) CDC was experiencing a backlog of FOIA requests,

25   and (b) the initial FOIA exemptions claimed by CDC were appropriate. ECF 64, pp. 6-11.

26

27

28

1    Typically, the fourth factor "'is not dispositive' and can be outweighed where the other
2 relevant factors favor an award." *Cohodes v. United States Dep't of Just*., 2025 WL 572888, at *11
3 (N.D. Cal. Jan. 24, 2025) (quoting *Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859, 870 (N.D.
4 Cal. 2012)); *see also O'Neill, Lysaght & Sun v. D.E.A.*, 951 F. Supp. 1413, 1425 (C.D.Cal.1996)
5 (noting that the fourth factor "in particular should not be considered dispositive"). "If the
6 Government's position is correct *as a matter of law*, that will be dispositive. If the Government's
7 position is founded on a colorable basis in law, that will be weighed along with other relevant
8 considerations in the entitlement calculus." *Chesapeake Bay Found. v. United States Dep't of*
9 *Agric.*, 304 U.S. App. D.C. 167, 11 F.3d 211, 216 (1993) (emphasis added).

10    As addressed below, Defendants have failed to meet their burden of demonstrating any
11 reasonable basis in law for delaying their response to USRTK's requests.

12    **1.    Defendants have failed to demonstrate exceptional circumstances.**

13    Typically, FOIA allows an agency twenty days to respond to a request. 5 U.S.C. §
14 552(a)(6)(A). An agency may be granted more time to complete its review of the records"[i]f the
15 Government can show exceptional circumstances exist and that the agency is exercising due
16 diligence in responding to the request." *Id*. § 552(a)(6)(C). Exceptional circumstances do not
17 "include a delay that results from a predictable agency workload of requests . . . unless the agency
18 demonstrates reasonable progress in reducing its backlog of pending requests." *Id.* §
19 552(a)(6)(C)(ii); *see also Gov't Accountability Project v. HHS*, 568 F. Supp. 2d 55, 60-61 (D.D.C.
20 2008)(holding that "allowing a mere showing of a normal backlog of request to constitute
21 'exceptional circumstances' would render the concept and its underlying Congressional intent
22 meaningless"; finding that where requests had increased for the last four years, "by this point, [the
23 requests] appear to be more of a predictable agency workload than a deluge of unanticipated
24 responsibility"); *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 259 n.4
25 (D.D.C. 2005)("An agency must show more than a great number of requests to establish [. . .]
26 exceptional circumstances under the FOIA"); *Donham v. DOE*, 192 F. Supp. 2d 877, 882 (S.D. Ill.
27 2002) (refusing to accept agency's argument that its backlog qualifies as "exceptional
28

2
**PLAINTIFF'S REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**
**3:23-cv-04120-PHK**

1    circumstances" because "then the 'exceptional circumstances' provision would render meaningless

2    [FOIA's deadlines].")

3          Additionally, an agency also will fail to establish reasonable delay based on "backlog"

4    where two requests submitted at the same time are responded to at different times. *See Lacy v.*

5    *United States Dep't of State*, No. 8:22-cv-01065-DOC-KES, 2023 U.S. Dist. LEXIS 195381, *16

6    (C.D. Cal. 2023).

7          Both of USRTK's FOIA requests were submitted in January of 2023. ECF 60, ¶4. CDC did

8    not produce any documents until the complaint in this action was filed (almost 8 months after

9    USRTK had submitted its requests). *Id.* Final production for Request One did not occur until May

10   of 2024 (almost 15 months after USRTK made the request), and the final production for Request

11   Two did not occur until November of 2023 (almost 11 months after USRTK made the request.) *Id.*

12   at ¶¶6, 10.

13         Defendants argue that CDC's delay in responding to USRTK's requests was the result of the

14   agency's backlog and limited resources, noting that CDC has 13 FOIA analysts, and in 2023, the

15   agency received 1,951 FOIA requests and processed 2,048 requests. ECF 64, p. 8; ECF 64-1, ¶18.

16   Not only do these 2023 statistics fail to explain why requests made in January of 2023 could not be

17   answered more expeditiously, but Defendants also fail to explain why one request was answered

18   more quickly than the other. *See Lacy*, 2023 U.S. Dist. LEXIS at *16. CDC also fails to demonstrate

19   that this backlog is an exceptional circumstance which it is making reasonable progress toward

20   addressing. *See* 5 U.S.C. 552(a)(6)(C)(ii). Relying only on the agency's number of FOIA requests

21   simply is insufficient. *Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 259 n.4.

22         **2.    No reasonable basis in law has been demonstrated regarding Defendants'**
23                 **reliance on FOIA exemptions.**

24         FOIA's central purpose is "to pierce the veil of administrative secrecy and to open agency

25   action to the light of public scrutiny," *Department of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

26   Exemptions to disclosure are narrowly construed to ensure this central purpose is not circumvented.

27   *See FBI v. Abramson*, 456 U.S. 615, 630 (1982); *Ctr. for Investigative Reporting v. United States*

28

*DOL*, No. 3:22-cv-07182-WHA, 2023 U.S. Dist. LEXIS 228637, *8 (N.D. Cal. 2023); *N.Y. Pub. Interest Research Grp. v. United States EPA*, 249 F. Supp. 2d 327, 333 (S.D.N.Y. 2003). The agency claiming an exemption bears the burden of justifying its withholding of any requested documents. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

> **a)    Because Defendants did not respond to USRTK's requests until after suit was filed, they cannot demonstrate any reasonable basis in law.**

"[A]n agency lacks a colorable basis in law where it does not respond to a FOIA request until *after* a lawsuit has been filed." *Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 46 (D.D.C. 2016) (citing *Davy v. CIA,* 57, 550 F.3d 1155, 1158 (2008)) (emphasis added). Fee provisions were enacted to combat government agencies claiming exemptions (or explaining the basis for claimed exemptions) after suit has been filed. *See Davy*, 550 F.3d at 1163.

Here, CDC did not produce any documents in response to USRTK's FOIA requests until *after* USRTK filed a complaint, and prior to the complaint, CDC did not confer with USRTK about any potential exemptions. *See* Rivo Decl. at ¶4. Accordingly, Defendants are unable to demonstrate that the fourth factor weighs in their favor, and attorneys' fees and costs should be awarded.

> **b)    Defendants had no reasonable basis in law for claiming documents were exempt based on FOIA Exemption 4.**

"[N]ot every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4." *Public Citizen Health Research Group v. Food and Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). To demonstrate that documents are shielded from disclosure, an agency must establish that the records are (1) commercial, (2) obtained from a person, and (3) confidential. *See* 5 U.S.C. § 552(b)(4); *Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1290.

Even where a commercial interest exists, if the information is disclosed "to any member of the public," Exemption 4 does not apply. *Seife v. United States FDA*, 43 F.4th 231, 235 (2d Cir. 2022); *see also Cottone v. Reno*, 193 F.3d 550, 554, 338 U.S. App. D.C. 270 (D.C. Cir. 1999)

1   ("materials normally immunized from disclosure under FOIA lose their protective cloak once

2   disclosed and preserved in a permanent public record"); *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276,

3   1279, 296 U.S. App. D.C. 405 (D.C. Cir. 1992) ("the government cannot rely on an otherwise valid

4   exemption claim to justify withholding information that has been 'officially acknowledged' or is in

5   the 'public domain'" (citation omitted).

6        "The focus of Exemption 4 is on information provided to the governmental agency by a

7   person outside that agency; thus, it does not protect information generated by the government

8   agency itself." *Providence Journal Co. v. Convention Ctr. Auth.*, 774 A.2d 40, 53 (R.I. 2001)(citing

9   *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 360 (1979)). The requirement that the at-

10  issue commercial information be obtained from a person outside the agency "indicates the

11  contemplated harm is to the person from whom the agency receives the confidential information –

12  that is, the submitter. Thus, the protected interests are the submitter's commercial interests," and in

13  addressing potential harm to these interests, FOIA refers to "harm to the submitter's commercial []

14  interests." *Seife*, 43 F.4th at 240.

15       "To determine whether information is 'confidential' under Exemption 4, a court first must

16  find that the information was submitted involuntarily – that the submitter was required to provide

17  the information to the Government. If the information was submitted involuntarily, the information

18  is deemed confidential if its disclosure is 'likely either (1) to impair the Government's ability to

19  obtain necessary information in the future; or (2) to cause substantial harm to the competitive

20  position of the person from whom the information was obtained.'" *Customs & Int'l Trade*

21  *Newsletter v. United States Customs & Border Prot.*, 588 F. Supp. 2d 51, 55 (D.D.C. 2008). An

22  agency does not meet its burden by putting forth "conclusory allegations." *Pub. Citizen Health*

23  *Research Grp.*, 704 F.2d at 1291; *see also Ctr. for Investigative Reporting v. United States DOL*,

24  No. 3:22-cv-07182-WHA, 2023 U.S. Dist. LEXIS 228637, *5 (N.D. Cal. 2023) ("merely suggesting

25  that the disclosure of information will result in commercial repercussions does not satisfy" a

26  government's burden); *Besson v. United States DOC*, 480 F. Supp. 3d 105, 113 (D.D.C. 2020)

27  (rejecting government's argument because agency failed to identify how the information, if

28

released, could have commercial consequences); *Gov't Accountability Project v. United States HHS*, 691 F. Supp. 2d 170, 175-176 (D.D.C. 2010) (rejecting government argument supported only by "vague and conclusory allegations … that release of the information at issue will likely cause competitive harm"); *N.Y. Pub. Interest Research Grp.*, 249 F. Supp. 2d at 333-334 (rejecting government's argument that exemption applied to commercial entity where government failed to "reveal anything about the nature and character of [the entity's] business, or its revenues, expenses or income, or anything that a commercial business would want to protect for fear of competitive injury. There has been no showing that the information had intrinsic commercial value to [the entity] or to its competitors, or was used by [the entity] in any aspect of its daily operations, or that [the entity] had a commercial interest that could be compromised by its disclosure").

Where the information that a government agency seeks to preclude is stale or outdated, courts also are unlikely to uphold reliance on FOIA Exemption 4. *See Ctr. for Investigative Reporting*, 2023 U.S. Dist. LEXIS at *13; *Biles v. HHS*, 931 F. Supp. 2d 211, 225-226 (D.D.C. 2013).

Here, the at-issue information withheld under Exemption 4 was (1) not commercial in nature, (2) not submitted by a person whose commercial interests were at stake, and (3) not confidential.

For all but one document[1], Defendants make no attempt to establish that CDC's claim of FOIA Exemption 4 was based on commercial information, but instead, argue that the exemption was used to preclude disclosure of records submitted by the World Health Organization ("WHO") based upon WHO's information disclosure policy, which identifies potentially confidential

---

[1] The only document actually disclosed as possibly containing commercial information "pertained to an evaluation and assessment of a specific hospital in Sierra Leone that had been involved in treating the Ebola outbreak." ECF 64-1, ¶28. The hospital in question is the Kenema Governmental Hospital. Rivo Decl. at ¶5. Defendants produced this document to USRTK in May of 2024 after realizing the information already had been made public. ECF 64-1, ¶¶28, 41. In fact, Defendants admit CDC was aware of this public disclosure no later than November 7, 2023. *Id.* at ¶41. It is unclear why it took CDC almost 6 months thereafter to actually produce the document to USRTK.

PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS
3:23-cv-04120-PHK

1   information to include information received from member states or third parties, which, if disclosed,

2   would compromise WHO's relationship with the member states or third parties. ECF 64-1, ¶23 and

3   n.1; infodisclosurepolicy. pdf at p. 12. Such information is designated differently from commercial

4   information. *See* infodisclosurepolicy. pdf at pp. 12, 14. To be clear, CDC never asserts that WHO,

5   as the submitter, had commercial interests that might be harmed. CDC never explains how the

6   information had intrinsic commercial value or was used in any aspect of WHO's commercial

7   operations.

8          In fact, the pages that CDC argues were properly identified as being exempt under FOIA

9   Exemption 4 contain no information regarding anything that a commercial business would want to

10  protect for fear of competitive injury. Rivo Decl. at ¶7. Instead, they consist primarily of slides that

11  summarize incidences of Ebola, deaths from Ebola, the number of days since the last confirmed

12  Ebola case was diagnosed, vaccine safety, viral hemorrhagic fever cases, as well as maps and

13  general photographs. *Id.*

14         All of the documents which CDC initially withheld based on FOIA Exemption 4 were

15  subsequently turned over to USRTK. Rivo Decl. at ¶5. They *all* consist of pages from a 2015

16  slideshow that addresses the Sierra Leone Trial to Introduce a Vaccine against Ebola (STRIVE). *Id.*

17  at ¶5. STRIVE was sponsored *by the CDC* and conducted in collaboration with the College of

18  Medicine and Allied Health Sciences, University of Sierra Leone, and the Ministry of Health and

19  Sanitation. *Id.* at ¶6c. Its goal was to accelerate availability of vaccines to a high-risk populations

20  while also evaluating safety and efficacy. *Id.* at ¶¶6a, 6c. WHO's role involved leading a vaccine

21  trial in Guinea. *Id.* at ¶6c. CDC began publishing on STRIVE as early as 2015, both on its own

22  website and in various infectious disease journals. *Id.*

23         CDC, the sponsor of STRIVE, cannot seriously contend that a decade-old slideshow

24  summarizing the STRIVE initiative contains confidential, commercial information that could

25  impact WHO's competitive position. Nor can CDC credibly argue that it was unaware STRIVE

26  information had not been previously disclosed to the public. As such, asserting FOIA Exemption 4

27  to withhold documents was not correct as a matter of law nor was it reasonable.

28

PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS
3:23-cv-04120-PHK

c)    **Defendants had no reasonable basis in law for claiming Documents were exempt based on FOIA Exemption 5.**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has construed this somewhat opaque language to "exempt those documents, and only those documents that are normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975). "[I]n the absence of a claim that disclosure would jeopardize state secrets, memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government." *EPA v. Mink*, 410 U.S. 73, 87-88, 93 S. Ct. 827, 836 (1973). An assertion that inter- or intra-agency documents are exempted based on a deliberative process privilege must show that the material to be precluded from disclosure does not contain factual information, and the agency must demonstrate that disclosure "would--not could" jeopardize state secrets or harm the agency's deliberative process. *Wiggins v. United States DOJ*, Civil Action No. 20-3565 (ACR), 2025 U.S. Dist. LEXIS 53052, *7-8 (D.D.C. 2025) Generic assertions of harm do not suffice to carry the government's burden. *See id.*

In this case, Defendants argue they lifted this exemption for some documents, although the agency "was under no obligation" to do so. ECF 64, p. 11. This conclusion is completely without merit. Not only is Defendants' assertion generic and made without citation to any supporting evidence, but it ignores this Court's April 22, 2024 Order. ECF 32. Ultimately, Exemption 5 redactions were maintained only as to a single, two-page document. ECF 60, ¶10.

B.    **USRTK's request for fees and costs is reasonable.**

Congress has provided for the award of attorney fees in FOIA suits through enactment of 5 U.S.C. §552.

The legislative history of that section is extensive and illuminating. Congress realized that too often the insurmountable barriers presented by court costs and attorney fees to the average person requesting information under the FOIA enabled the government to escape compliance with the law. Recognizing that the FOIA had established a national policy of

PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS
3:23-cv-04120-PHK

public disclosure of government information, Congress found it appropriate and desirable, in order to effectuate that policy, to provide for the assessment of attorney fees against the government where the complainant prevailed in FOIA litigation.

*Cuneo v. Rumsfeld*, 180 U.S. App. D.C. 184, 553 F.2d 1360, 1363-1364 (1977).

As relevant here, FOIA's fee provision is intended to compensate plaintiffs where government agencies provide no response to requests until after litigation begins. In *Davy*, the Court considered a FOIA case involving two FOIA requests. *See Davy*, 550 F.3d at 1163. No documents were produced until after the plaintiff files his lawsuit, and initially, the government invoked FOIA exemptions in its response. *See id.* With this invocation, the government did not provide any legal basis for the exemptions. *See id.* The Court said that failing to respond to the requests until after litigation began was "exactly the kind of behavior the fee provision was enacted to combat." *Id.* The Court also noted the government could not defeat an award of fees by "citing a lack of resistance after the requester files a lawsuit" because such an excuse would "force plaintiffs to bear the costs of litigation." *Id.*

In the Motion, USRTK requests the Court award it $139,778.15 in fees and $1,337.60 in costs, for a total of $141,115.75. ECF 58, p. 15. USRTK also now requests an additional $17,730 in fees for work incurred in responding to Defendants' opposition. Rivo Decl. at ¶8 and Exh. 1. Defendants argue that USRTK's fees and costs should be reduced because of the "simple nature of the litigation" and because the disputes were resolved without any motions having to be filed. ECF 64, p. 12. This argument ignores that Plaintiff had to file a complaint before CDC produced any documents in response to USRTK's two FOIA requests, repeatedly communicate with counsel for CDC to produce documents and remove baseless claims of exemptions, and participate in a settlement conference and multiple mediation discussions. ECF 59, ¶¶7-11, 16; ECF 60, 4-16. Defendants also ignore that the Court had to issue an order requiring Defendants to respond in full to Plaintiff's request to re-process documents. ECF 31, p. 4. Just as in *Davy*, FOIA's fee provision is intended to award fees that USRTK incurred to finally get documents to which it was entitled. *See Davy*, 550 F.3d at 1163.

1.      **USRTK's rates are reasonable.**

Defendants argue that Plaintiff's fee rates are not reasonable because Judge Hixson recently awarded fees at a lower rate. ECF 64, p. 13. That case does not limit Plaintiff's request in this case, however.

The case addressed by Judge Hixson on March 19, 2025 addressed a FOIA case between USRTK and the United States Department of Defense, Uniformed Services University of the Health Sciences (USU), in which USRTK sought records concerning COVID-19. Rivo Decl., ¶9 and Exh. 2, pp. 1-2. USRTK was represented by Daniel Snyder, an Oregon attorney with the non-profit legal organization, Public Justice. Rivo Decl., ¶10. As the case was filed in the Northern District of California, Greenfire Law PC served as local counsel. *Id.*

When the complaint was filed in the USU case, the government had yet to provide any documents in response to FOIA requests by USRTK. Rivo Decl., Exh. 2, p. 2. After litigation began, USU attempted to streamline resolution of the matter. *Id.* at p. 3. The USU case did not require any filing of motions nor did the parties attend a settlement conference. Rivo Decl., ¶11.

USRTK requested the Court award it $75,237.87 in fees and $6,583.96 in costs, for a total of $81,821.83. *Id.*, ¶12. The majority of hours spent on the litigation were a result of work performed by Public Justice. *Id.* Greenfire Law PC sought fees only for 39.27 hours. *Id.* USU understood that Greenfire Law PC was not the lead counsel, arguing against Greenfire Law PC obtaining any fees because its attorneys were not substantively engaged in the merits of the underlying FOIA claim. Rivo Decl., Exh. 2, pp. 14-15.

Defendants note that the hourly rate in the USU case, which was lower than the rate Plaintiff now seeks, was supported by a declaration from Richard Drury, and the Court should only consider the declaration submitted in the USU case (and ignore the declaration submitted in this case). ECF 64, pp. 14-15. Plaintiff is unaware of any caselaw supporting Defendants' position, and Defendants cite to no such law. Moreover, while the requested rates were lower in the USU case, Plaintiff also asked for a lodestar multiplier, and Mr. Drury declared that a multiplier of 1.5 or higher was appropriate. Rivo Decl., ¶12. Here, Plaintiff's counsel did not ask Mr. Drury to give opinions

1    regarding a multiplier, instead limiting the fee request to reasonable hourly rates based on the

2    Laffey Matrix and fee awards issued in cases in the Northern District of California. *Id.*, ¶13. And,

3    Greenfire Law PC's rates in the USU case were based on the Laffey Matrix's rates for 2023-2024,

4    while Mr. Drury used the 2024-2025 Laffey Matrix rates for the current action. *Id.*, ¶14.

5         The USU case and the instant case are not identical, and nothing from the USU order issued

6    by Judge Hixson limits reasonable rates in the instant action or detracts from Richard Drury's

7    declaration.

8                        **2.    Plaintiff's billing is not excessive.**

9         Defendants argue that Plaintiff's billing is excessive, noting that Plaintiff seeks $27,510 for

10   hours incurred in drafting the fees motion in this case. ECF 64, p. 13. To support this claim,

11   Defendants note the fee award in the USU case was approximately the same. *Id.* However, because

12   the Motion here is similar to the motion in the USU case, Defendants believe less time should have

13   been spent on the Motion. *Id.* Again, as noted above, Greenfire Law PC only served as local counsel

14   in the USU case. In that case, the fee motion was written primarily by Dan Snyder with Public

15   Justice, with Greenfire Law PC assisting with edits and factual content. Rivo Decl., ¶11. Moreover,

16   the fee motions in the two cases are not identical as they involve completely different background

17   facts and a different defendant, necessarily making the argument section different. The fact that a

18   handful of paragraphs addressing foundational law in FOIA cases are the same does not render

19   Plaintiff's billing in this case excessive.

20                        **3.    Plaintiff substantially reduced fees.**

21        In contingency matters like this, "the court should defer to the winning lawyer's professional

22   judgment as to how much time he was required to spend on the case; after all, he won, and might

23   not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th

24   Cir. 2008). Yet, Defendants contend USRTK's counsel spent too much time in preparing the

25   complaint in this action, should not be able to obtain full fees for routine litigation tasks or

26   strategizing about the case, and should not be able to obtain full fees for administrative tasks. ECF

27

28

64, pp. 15-16. Notably, however, Defendants provide no evidence of what amount of time would be reasonable. They provide no declarations or other evidence in this regard. Defendants also ignore that Plaintiff already has reduced its fee demand overall by 23.77% (and 86.97% for work performed by administrative staff/paralegals) in the exercise of sound billing judgment. ECF 58, p. 16.

### 4.    Plaintiff is entitled to fees-on-fees.

Plaintiff has spent over 30 hours preparing the Motion and this reply; Plaintiff spent over 50 hours related to settlement.[2] Defendants assert that such a fees-on-fees demand is excessive. ECF 64, p. 17. Interestingly, Defendants do not cite to the USU fee award order when making this argument, perhaps because Judge Hixon found fees-on-fees awards were appropriate despite the fact that Plaintiff's counsel spent more time on the fee motion relative to the time spent on the case's merits. Rivo Decl., Exh. 2, p. 31. In reaching this conclusion, Judge Hixon referred to "*Kopp v. United States Secret Serv.*, 2019 WL 2327933, at *7 (N.D. Cal. May 31, 2019) ("Because the issue of fees was not resolved by the production of documents, further litigation beyond that point was necessary, and fees for such litigation were reasonably incurred."); *Hum. Rights Def. Ctr. v. Cnty. of Napa,* 2021 WL 1176640, at *14 (N.D. Cal. Mar 28, 2021)(finding fees on fees request reasonable because case settled early in the litigation and the proportion of time spent on recovering attorneys' fees relative to the time spent on the merits was understandably larger than if the parties engaged in lengthy litigation)." *Id.*

Plaintiff noted in the Motion that approximately 54% of the fees being sought are based on work associated with settlement and the Motion. ECF 58, p. 17. In this regard, Plaintiff repeatedly tried to resolve the case without delay and the incurrence of associated billable hours; however,

---

[2] Defendants contend that over 50 hours "to exchange a handful of settlement demands with Defendants and prepare for and attend one half day settlement conference" is unreasonable. ECF 64, p. 17. But, the 50 hours is not limited to the described work. ECF 59-1. Defendants do not identify any specific entry which is unreasonable.

12

Defendants' delay and settlement posture made this impossible. *Id.* That is, *but for* Defendants' behavior, Plaintiff would not have incurred such fees.

Plaintiff has submitted detailed time records to support its fee request, and the fact that this request is higher than requests in other cases is not determinative -- especially when it also is lower than requests in other cases. *See e.g.*, *Guerrero v. Pendelton*, No. 5:22-cv-00931-WLH-KK, 2024 U.S. Dist. LEXIS 165625, *4 n.2 (C.D. Cal. 2024) (fees for 72.9 hours spent on fees-on-fees work compensable); *Angel Jet Servs., LLC v. Giant Eagle, Inc.*, No. CV-09-01489-PHX-SRB, 2013 U.S. Dist. LEXIS 193350, *34 (D. Ariz. 2013) (77.4 hours on fee motion is reasonable).

## II.    Conclusion

Based on the analysis and USRTK's expert's opinion, USRTK respectfully requests the Court award $157,508 in fees and $1,337.60 in costs, for a total of $158,845.62.

Dated: April 4, 2025                                         Respectfully Submitted,


*/s/ Lily A. Rivo*
Lily A. Rivo
Rachel S. Doughty
GREENFIRE LAW, PC

*Attorneys for Plaintiff*

PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS
3:23-cv-04120-PHK