1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

US RIGHT TO KNOW,

Plaintiff,

v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, et al.,

Defendants.

Case No. 23-cv-04120-PHK

**ORDER GRANTING-IN-PART
PLAINTIFF'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND
COSTS**

Re: Dkt. 58

This is a Freedom of Information Act ("FOIA") case. Before the Court is Plaintiff US Right to Know's ("USRTK") Motion for Attorneys' Fees and Costs. [Dkt. 58]. Defendants (the U.S. Department of Health and Human Services ("HHS") and the U.S. Centers for Disease Control and Prevention ("CDC") oppose this motion. [Dkt. 64]. The Court held a hearing on this motion on April 21, 2025. [Dkt. 67]. After carefully reviewing all relevant briefing, the Parties' exhibits and submissions, and the oral argument presented at the hearing, the Court **GRANTS-IN-PART** Plaintiff USRTK's motion for attorneys' fees and costs.

All Parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636. [Dkts. 15, 24].

## RELEVANT BACKGROUND

USRTK is a California nonprofit corporation that investigates and publicly reports on documents obtained through public records laws regarding health, environmental, and food system matters. [Dkt. 62 at ¶ 3]. In January 2023, USRTK began submitting public records requests seeking data from public institutions in an attempt to discover what is known about the origins of the 2014 Ebola outbreak in West Africa. *Id.* at ¶ 11.

USRTK submitted two FOIA requests as part of its investigation. *Id.* at ¶ 13. One request ("Request One") was sent to Defendant CDC on January 24, 2023. *Id.* Another request ("Request Two") was sent to Defendant HHS on January 21, 2023. *Id.* According to USRTK, the requests related to the operations and activities of CDC and HHS, and the disclosure of the requested records would contribute to public understanding of the West African Ebola virus epidemic. *Id.* at ¶ 15.

Regarding Request One, on January 30, 2023, the CDC invoked the "unusual circumstances" exception to FOIA's twenty-day determination deadline, stating that it expected to receive voluminous records in response and anticipated being able to produce records by March 13, 2023. *Id.* at ¶ 16; [Dkt. 64 at 6]. The CDC also asked for additional contact information regarding persons identified in Request One. [Dkt. 62 at ¶ 16]. USRTK responded to the CDC's request on January 31, 2023. *Id.*

On February 9, 2023, the CDC wrote to USRTK seeking to narrow the scope of its request, on the grounds that processing Request One as presented would be unduly burdensome and unreasonably strain agency resources. *Id.* at ¶ 17. USRTK responded on February 10, 2023, by providing the CDC with a narrowed scope for Request One. *Id.* at ¶ 18. On March 9, 2023, the CDC asked USRTK to further limit the scope of Request One. *Id.* at ¶ 19. On March 20, 2023, USRTK agreed to modify the search parameters for Request One but noted that the request would remain as written so as not to further limit USRTK's efforts to obtain records relating to the CDC's knowledge of the origins of the 2014 Ebola virus outbreak. *Id.* at ¶ 20.

USRTK did not receive further communication from the CDC, and so on May 15, 2023, USRTK wrote the CDC asking for a status update and an estimated date of completion for Request One. *Id.* at ¶ 21. On May 16, 2023, the CDC responded that the search regarding Request One had been completed and that the records were awaiting review. [Dkt. 64 at 6]. The CDC, however, could not provide an estimated date of completion but indicated it would send a response regarding completion of Request One "as soon as possible." *Id.* USRTK received no communications or records responsive to Request One by June 15, 2023, and so USRTK requested a formal "determination" of Request One pursuant to 5 U.S.C. § 552(a)(6)(A)(i). [Dkt. 62 at ¶ 22 (sic, incorrectly citing § 552(a)(6)(B)(i))]. The CDC did not respond to USRTK's request or provide a

formal determination.  *Id*.

Regarding Request Two, on February 1, 2023, Defendant HHS informed USRTK that Request Two was being referred to the CDC for direct response.  *Id*. at ¶ 23.  On March 9, 2023, USRTK wrote to the CDC requesting that that agency acknowledge Request Two, as well as stating that HHS and the CDC had not indicated when to expect a formal determination on Request Two and that neither had provided an estimated date of completion for Request Two.  *Id*.  The CDC acknowledged that it had received Request Two later that day.  *Id*.

On March 15, 2023, the CDC sought additional information from USRTK "to aid the agency in complying with" Request Two.  *Id*. at ¶ 24.  On March 20, 2023, USRTK responded and provided further information to the CDC.  *Id*.  USRTK additionally stated that it considered the March 15, 2023, letter as an acknowledgement by the CDC of Request Two.  *Id*.

On May 15, 2023, USRTK wrote to the CDC to request a status update and an estimated date of completion for Request Two.  *Id*. at ¶ 25.  On May 16, 2023, the CDC responded that the search relating to Request Two was completed, that an initial internal processing of the records was completed, and that the records were undergoing public disclosure notification pursuant to Executive Order 12600.  *Id.* at ¶ 25.  The CDC did not contact USRTK thereafter regarding Request Two or provide responsive documents.  *Id.* at ¶ 26.

On August 14, 2023, USRTK filed the Complaint in this action.  [Dkt. 1].  USRTK sought the following relief in that Complaint: (1) that the Court order the CDC to promptly disclose the requested records responsive to Request One and Request Two; (2) declare the CDC's failure to provide USRTK with a final determination for Request One and Request Two as unlawful under FOIA; (3) declare the CDC's failure to provide USRTK with all non-exempt records responsive to Request One and Request Two as unlawful under FOIA; (4) declare the CDC's failure to timely approve USRTK's request for a waiver of all fees associated with Request One and Request Two unlawful, and order the CDC to approve USRTK's fee waiver requests; (5) declare the CDC's failure to provide USRTK with an estimated date of completion, or updated estimated date of completion, for both Requests as unlawful under FOIA; and (6) award reasonable attorneys' fees and costs.  *Id*. at 16–17.

On September 29, 2023, the Government filed an Answer to USRTK's Complaint. [Dkt. 19]. The Government admitted to not responding to USRTK's FOIA Requests, providing an updated estimated date of completion for Requests One and Two, providing a final determination on Request One, and invoking FOIA's unusual circumstances exception for Request Two. *Id.* at ¶¶ 45–46, 50, 68, 70, 73. The Government also raised the following affirmative defenses: (1) "Plaintiff is not entitled to compel the production or release of information protected by one or more statutory exemptions or exclusions;" (2) "[USRTK] is not entitled to declaratory relief and/or any other relief beyond what is provided for under FOIA;" (3) "[USRTK] is neither eligible for nor entitled to attorney's fees or costs;" and (4) "[a]t all time[s] alleged in the Complaint, [the Government] acted in good faith, with justification, and pursuant to authority." *Id.* at 13–14.

On December 22, 2023, the CDC released its first round of records responsive to Request One, releasing 259 pages in full, 211 pages in part, and 66 pages fully withheld. [Dkt. 58 at 8]. The CDC withheld information pursuant to FOIA Exemptions 4 and 5. *Id.* On January 4, 2024, USRTK requested that the CDC provide a *Vaughn* index to determine the relevance of applied exemptions and withholding of information. *Id.* On January 16, 2024, the CDC confirmed they would produce the *Vaugh* index. *Id.* at 8–9. On March 29, 2024, the CDC provided USRTK with a supplemental release of 536 documents. *Id.* at 9. The Government avers that the CDC produced a draft of the *Vaughn* index as part of this document release, while USRTK avers that the CDC produced the *Vaughn* index responsive to Request One on April 2, 2024. [Dkt. 58 at 9, 64 at 9]. On April 16, 2024, USRTK identified approximately 29 pages for which they requested more information and a lifting of redactions. [Dkt. 58 at 9].

In a Joint Case Management Statement, USRTK requested that the Court set a deadline of April 30, 2024, for CDC to "respond in full to Plaintiff's request to re-process documents highlighted in the *Vaughn* index, including by lifting redactions and producing documents and/or providing more information for applied exemptions." [Dkt. 31 at 5]. In that same CMC Statement, the CDC stated that the CDC had previously represented to Plaintiff that "they will produce a reprocessed production of documents by April 26, 2024." *Id.* at 6. Accordingly, on April 22, 2024, the Court issued an Order requiring the CDC to abide by the agreed-upon April 26, 2024, deadline

to produce the reprocessed documents.  [Dkt. 32].  On April 26, 2024, the CDC produced to USRTK the reprocessed documents.  [Dkt. 58 at 10].

On May 7, 2024, USRTK requested additional information from the CDC regarding remaining exemptions and redactions in the reprocessed documents.  *Id.*  On May 10, 2024, the CDC produced its final production in response to Request One, lifting all Exemption 4 and Exemption 5 redactions, apart from Exemption 5 redactions in a single, two-page document.  *Id.*

On August 18, 2023, in responsive to Request Two, the CDC produced 391 pages of responsive records, 219 pages either in full or with minor redactions, and withheld 172 pages after asserting Exemptions 4 and 6.  *Id.*  Following this production, USRTK requested a *Vaughn* index for redactions in the production.  *Id.*  On November 29, 2023, the CDC lifted all redactions.  *Id.*

On May 17, 2024, the Parties informed the Court that all issues pertaining to the CDC's production of Request One and Request Two had been resolved, apart from the issue of attorneys' fees and costs.  *Id.* at 11.  The Parties engaged in settlement communications from June 2024 through January 2025 and attended a settlement conference on February 10, 2025.  *Id.*  The Parties' attempts to settle the dispute over fees and costs were unsuccessful.  *Id.*

On March 12, 2025, the Parties stipulated that USRTK was eligible for fees.  [Dkt. 57].  On March 14, 2025, USRTK filed the instant motion seeking an award of fees and costs.  [Dkt. 58].  The Defendants opposed on March 28, 2025, [dkt. 64], and USRTK filed its reply brief on April 4, 2025.  [Dkt. 65].  The Court heard oral argument at the hearing on this motion on April 21, 2025, at the conclusion of which this matter was submitted for resolution.  [Dkt. 67].

# LEGAL STANDARD

## I.    ELIGIBILITY AND ENTITLEMENT OF FEES

FOIA plaintiffs must show that they are (1) eligible and (2) entitled to their fees.  *Church of Scientology v. U.S. Postal Servs.*, 700 F.2d 486, 489 (9th Cir. 1983).  First, "to be eligible for an award, a party must show that '(1) the filing of the action could reasonably have been regarded as necessary to obtain the information,' and that '(2) the filing of the action had a substantial causative effect on the delivery of the information.'"  *Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, 365 F. Supp. 3d 993, 997–98 (N.D. Cal. 2018) (quoting *Church of Scientology*, 700 F.2d at

489).  As noted, the Parties stipulate that USRTK is eligible for fees.  [Dkt. 57].

The primary issue on the instant motion is whether URTK is entitled to fees and costs, and, if so, the amounts to be awarded.  Entitlement is discretionary and analyzed under four factors: (1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law.  *The Sierra Club v. United States Env't Prot. Agency*, 75 F. Supp. 3d 1125, 1142 (N.D. Cal. 2014) (citing *Long v.  I.R.S.*, 932 F.2d 1309, 1313 (9th Cir. 1991))**.**  "These four criteria are not exhaustive."  *Id.*  In addition to the four factors, "'the court may take into consideration whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate.'"  *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 2017 WL 783490 at *4 (N.D. Cal. Mar. 1, 2017) (quoting *Long*, 932 F.2d at 1313).  "Courts use the four factors guiding their discretion "keeping in mind 'the basic policy of the FOIA to encourage the maximum feasible public access to government information.'"  *The Sierra Club*, 75 F. Supp. 3d at 1142 (quoting *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977)) (citing *Church of Scientology*, 700 F.2d at 494).  "Additionally, the court may take into consideration 'whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate.'"  *The Sierra Club*, 75 F. Supp. 3d 1125, 1142 (N.D. Cal. 2014) (citing *Long*, 932 F.2d at 1313).

## II.    REASONABLE ATTORNEY FEES

"[O]nce the court has determined that the plaintiff is both eligible for and entitled to recover fees, the award must be given and the only room for discretion concerns the reasonableness of the amount requested."  *Long*, 932 F.2d at 1314.  The "customary method" for awarding fees is the lodestar method, calculated by multiplying the number of hours reasonably expended by the prevailing party in the litigation by a "reasonable hourly rate."  *Hiken v. Dep't of Defense*, 836 F.3d 1037, 1044 (9th Cir. 2016) (quoting *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir. 1996)).  "There is a 'strong presumption' that the lodestar figure represents a reasonable award."  *Id.* (quoting *Long*, 932 F.2d at 1314).  "It is axiomatic that 'trial courts need not, and indeed should not, become green-eyeshade accountants' in examining fee requests since '[t]he essential goal in shifting fees (to

United States District Court
Northern District of California

either party) is to do rough justice, not to achieve auditing perfection.'" *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223, 235 (D.D.C. Apr. 8, 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). A lodestar figure should only be departed from "if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." *Long*, 932 F.2d at 1314.

The district court must "provide a . . . detailed account of how it arrives at appropriate figures for 'the number of hours reasonably expended' and 'a reasonable hourly rate.'" *Hiken*, 836 F.3d at 1044 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). "Though the district court generally possesses a 'superior understanding of the litigation,' '[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Once a lodestar figure is determined, it is "presumed to be [a] reasonable fee." *Blum*, 465 U.S. at 897. "The district court may nonetheless consider other factors in determining whether to adjust the fee award upward or downward," but it "should explain why the adjustment was appropriate." *Hiken*, 836 F.3d at 1044.

## DISCUSSION

### I. WHETHER PLAINTIFF USRTK IS ELIGIBLE AND ENTITLED TO FEES

As discussed above, the Parties stipulate that USRTK is eligible for fees. [Dkt. 57]. Based on the Parties' stipulation, the Court finds that USRTK is eligible for fees under applicable legal standards.

The remaining central issues on the instant motion are whether USRTK is entitled to fees and costs—and, if so, what amounts should be awarded. On the issue of entitlement, USRTK argues that all four entitlement factors support its request for fees. [Dkt. 58 at 13–15]. The Defendants do not dispute the first three factors and focus the opposition on the fourth factor, *viz.* whether the government's withholding of the records had a reasonable basis in law.

Although there is apparently no substantial dispute as to the first three facts, the Court analyzes each entitlement factor in order to appropriately resolve the issue here. *Schoenberg v. F.B.I.*, 2 F.4th 1270, 1278 (9th Cir. 2021) ("the four factors are not equally weighted—they each

involve a sliding scale, allowing one or more factors to outweigh the others").  The Court addresses each entitlement factor in turn.

### A.    The public benefit from disclosure

"The public benefit factor takes into account the 'degree of dissemination and the likely public impact that might result from disclosure.'" *The Sierra Club*, 75 F. Supp. 3d at 1142 (quoting *Church of Scientology*, 700 F.2d at 493). "An award of attorneys' fees is disfavored when it merely subsidizes private concerns." *Id.* However, "[a] public benefit may result even though the specific document is for plaintiff's sole use." *Id.*

Here, USRTK argues that the "records sought by USRTK are essential to the public understanding of the operations and activities of the government" in relation to the "origins of the 2014 Ebola epidemic in West Africa." [Dkt. 58 at 13–14].  USRTK argues that "USRTK noted that disclosure of the requested records would contribute to a reasonably broad audience of interested persons' understanding of the origins of the West African Ebola virus epidemic."  *Id.* at 14 (citation omitted).  Furthermore, "USRTK promptly posted all of [*sic*] records produced in this case on its public website."  *Id.* (citation omitted).  The Government does not argue otherwise.  *See* Dkt. 64 at 11–16.

Accordingly, the Court finds that the public benefit factor weighs in favor of USRTK being entitled to fees.  The records on the origins of the 2014 Ebola epidemic that USRTK sought pertain to a public health matter.  USRTK's seeking and later public disclosure of these records contributes to the public's knowledge regarding governmental operations relating to this public health issue.  USRTK has demonstrated that it made available the information to a broad audience by posting the records on its public website, and the Government does not dispute the potential public benefit.  *Urban Air Initiative, Inc. v. Environmental Protection Agency*, 442 F. Supp. 3d 301, 315 (D. D.C. 2020) (finding first entitlement factor satisfied where "information would be of interest to the multiple stakeholders involved in and affected by matters of national environmental policy ***and public health***") (emphasis added).  Accordingly, the Court finds that the first entitlement factor weighs in favor of USRTK's motion.

### B.    Commercial benefit and nature of plaintiffs' interest

The second and third factors, commercial benefit and nature of plaintiffs' interest, are typically analyzed together. *The Sierra Club*, 75 F. Supp. 3d at 1144. "The commercial benefit to the party resulting from disclosures and the nature of the plaintiffs' interest are closely related and often considered together." *Id.* (citing *Church of Scientology*, 700 F.2d at 494). "In general, '[i]f either commercial benefit will inure to the plaintiff from the [obtained] information or plaintiff intends to protect a private interest, . . . an award of attorney's fees is not recoverable.'" *Id.* (alterations in original). "Conversely, 'where plaintiff is indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information.'" *Id.* "Ninth Circuit precedent instructs courts evaluating these two factors that they 'should generally award fees if the complainant's interest in the information sought was . . . public-oriented.'" *Id.* (quoting *Long*, 932 F.2d at 1316).

Here, USRTK argues that it is a "non-profit organization[,]" "has no commercial interest in the records that are responsive to" its requests, and its "advocacy in this matter contributes significantly to public understanding of the operations or activities of the government,[] especially as it relates to Ebola and public health emergencies." [Dkt. 58 at 15 (citations omitted)].  The Government does not argue otherwise.  *See* Dkt. 64 at 11–16.

Accordingly, the Court finds that the lack of commercial benefit to USRTK and the nature of plaintiff's interest both weigh in favor of USRTK's entitlement to fees.  USRTK's public-oriented interests align with FOIA's core purpose, and awarding attorney's fees under these circumstances is consistent with Ninth Circuit precedent encouraging access to government information where the plaintiff's interests are non-commercial and public-facing.  *See, e.g., Our Children's Earth Found.*, 2017 WL 783490 at *11 (finding entitlement factors two and three support non-profit's fees motion).

### C.    Whether the government's withholding of the records had a reasonable basis in law

In analyzing the final factor, Courts consider "whether the government's withholding of the records sought had a reasonable basis in law." *The Sierra Club*, 75 F. Supp. 3d at 1142 (quoting *Church of Scientology*, 700 F.2d at 492).  "The denial of a FOIA request must have a colorable basis in law and not merely for the purpose of frustrating the requester." *Id.* (citing *Rosenfeld v. U.S. Dept*

9

*of Justice*, 904 F. Supp. 2d 988 (N.D. Cal. 2012)). "The burden is on the government to demonstrate that its conduct is reasonable." *Id.* (citing *Davy v. C.I.A.*, 550 F.3d 1155, 1162–63 (D.C. Cir. 2008)).

"If the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Id.* at 1162. "It is not enough to say that 'once the [a]gency faced a justiciable FOIA claim, it offered no resistance,' [citation omitted], because the agency did not disclose the documents until after [FOIA plaintiff] Davy had pursued litigation, including filing a cross-motion for summary judgment and negotiating a release schedule." *Id.* at 1163.

After carefully reviewing the record, the Court finds that the Government's position was founded on a colorable basis in law. Specifically, "the CDC acknowledged receipt of both requests" before the initiation of the lawsuit, "the CDC informed Plaintiff that it had completed initial internal processing and was awaiting a response from a third party pursuant to mandatory pre-disclosure notification procedures[,]" and "the CDC released the records in Request Two immediately" after receiving permission. [Dkt. 64 at 12].

Regarding the delay in providing estimated completion dates, the Government had informed Plaintiff USRTK that it completed its search but could not provide a completion date, and "[t]he agency's backlog was simply the result of limited agency resources, and any delay in releasing the records was not obdurate or intended to frustrate the requester[.]" [Dkt. 58 at 15].

Finally, Plaintiff USRTK takes issue with "[t]he vast majority of redactions that Defendants initially identified as being exempt from production were lifted, and those exemptions that remained were inconsequential to Plaintiff's requests." *Id*. However, as explained in the Government's opposition, the CDC withheld 172 pages pursuant to Exemption (b)(4), which protects confidential commercial information the disclosure of which could reasonably be expected to cause competitive harm. [Dkt. 64 at 7–8]. The withheld records had been provided by the World Health Organization with the expectation of confidentiality, and CDC followed the procedures required by Executive Order 12600 by initiating the pre-disclosure notification process and considering the submitter's input regarding potential harm. *Id.* Similarly, in response to Request One, CDC withheld materials

10

1  pursuant to Exemption (b)(4) and Exemption (b)(5), the latter of which protects predecisional and

2  deliberative communications.  *Id.*  These actions reflect reliance on recognized FOIA exemptions

3  and established agency practices, rather than an unreasonable withholding of documents.  *Id.*

4  Moreover, when Plaintiff requested a *Vaughn* index, CDC voluntarily re-reviewed the

5  withheld materials to determine whether the information had subsequently entered the public

6  domain.  *Id.*  Upon discovering that the withheld data and analyses had been officially published,

7  CDC promptly notified WHO, lifted the prior withholdings, and re-released the records in full.  *Id.*

8  This sequence of events demonstrates good faith and an effort to comply with FOIA's disclosure

9  mandate as circumstances evolved.  *Id.*  Accordingly, the record reflects that the CDC acted

10  reasonably in initially withholding records under FOIA exemptions and in later correcting course

11  once it came to light that those exemptions no longer applied.  *Id.*  Accordingly, the Court finds that

12  the Government did have a colorable basis in law for initially asserting the exemptions.

### D.    Balancing the four factors

13
14  Balancing all four factors, the Court finds that they weigh in favor of Plaintiff USRTK's

15  entitlement to fees.  The first factor, public benefit, strongly supports entitlement because the

16  requested records pertain to a matter of significant public interest and were promptly disseminated

17  on USRTK's public website.  The second and third factors, commercial benefit and the nature of

18  plaintiff's interest, also support entitlement because USRTK is a nonprofit organization with no

19  commercial stake in the records, and USRTK sought disclosure to advance the public's

20  understanding of governmental operations related to a public issue.  While the fourth factor, the

21  reasonableness of the Government's position, leans in the Government's favor given the colorable

22  reliance on recognized FOIA exemptions and adherence to administrative procedures, the strong

23  showing on the first three factors outweighs the Government's position on the fourth.  Accordingly,

24  the Court concludes that USRTK is entitled to an award of attorney's fees.

## II.    THE AMOUNT OF FEES

25
26  USRTK requests an award of $157,508.15 in attorneys' fees, including fees for work

27  incurred by USRTK in responding to the Government's opposition to USRTK's Motion for

28  Attorneys' Fees, and $1,337.60 in costs, for a total of $158,845.75.  [Dkt. 65 at 13].  The

United States District Court
Northern District of California

1    Government argues that this request is excessive and that "[n]o reasonable private client would pay

2    such exorbitant sums for what amounts to a simple discovery dispute that was resolved without a

3    single filed motion." [Dkt. 64 at 5].

4        Courts use the lodestar figure to determine whether a party's request for attorneys' fees is

5    reasonable. *See Hiken*, 836 F.3d at 1044. To determine the lodestar figure, the Court assesses the

6    reasonableness of USRTK's requested hourly rate and whether the number of hours expended by

7    USRTK was reasonable. *See id.*

8        Additionally, the Court assesses USRTK's request for costs to determine if the costs were

9    reasonably incurred by a plaintiff who has substantially prevailed. 5 U.S.C. § 552(a)(4)(E) (a "court

10   may assess against the United States . . . other litigation costs reasonably incurred in any case under

11   this section in which the complainant has substantially prevailed.").

### A.    Reasonable Hourly Rate

13       "To determine a 'reasonable hourly rate,' the district court should consider: 'experience,

14   reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary

15   fees; and the novelty or the difficulty of the question presented.'" *Hiken*, 836 F.3d at 1044 (citing

16   *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986)). The fee applicant must

17   produce "satisfactory evidence" that the requested rates are in line with those prevailing in the

18   community for similar services by lawyers of reasonably comparable skill, experience, and

19   reputation. *Blum*, 465 U.S. at 895 n.11; *see also Roberts v. City of Honolulu*, 938 F.3d 1020, 1024

20   (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support

21   the requested hourly rate."). Generally, "[a]ffidavits of the plaintiffs' attorney and other attorneys

22   regarding prevailing fees in the community, and rate determinations in other cases, particularly those

23   setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."

24   *Hiken*, 836 F.3d at 1044 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403,

25   407 (9th Cir. 1990)).

26       Here, USRTK seeks an hourly rate of $1,141 for attorneys Rachel Doughty and Rae Lovko.

27   [Dkt. 58 at 16]. Attorney Doughty received her J.D. from the University of Virginia in 2004 and

28   founded Greenfire Law, PC, in 2011. [Dkt. 59 at ¶ 3]. Attorney Lovko received her J.D. from

United States District Court
Northern District of California

1    Golden Gate University and has 21 years of legal experience.  *Id*. at ¶¶ 6, 17.  Additionally, USRTK

2    seeks an hourly rate of $948 for attorneys Lily Rivo and Jessica Blome.  [Dkt. 58 at 16].  Attorney

3    Rivo received her J.D. from Hastings College of Law in 2005 and has 19 years of experience.  [Dkt.

4    59 at ¶¶ 5, 17].  Attorney Blome received her J.D. from the University of Iowa College of Law in

5    2007 and is a shareholder at Greenfire Law.  *Id*. at ¶ 4.  USRTK seeks a rate of $258 per hour for

6    administrative staff and paralegals.  [Dkt. 58 at 16].

7            The Government argues that USRTK's claimed hourly rates are excessive.  [Dkt. 64 at 18].

8    In support of its opposition, the Government cites *USRTK v. United States Department of Defense*

9    ("*USRTK v. DOD*"), 2025 WL 860503 (N.D. Cal. Mar. 19, 2025), a case which the Government

10   alleges "offers a nearly identical, and very recent, reference point for an award of reasonable

11   attorneys' fees and costs to this exact Plaintiff and counsel."  *Id*. at 17.  The Government claims that

12   in both *USRTK v. DOD* and in this case, USRTK relied on declarations by attorney Richard T. Drury

13   regarding USRTK counsel's reasonable hourly rates.  *Id*. at 18.  The Government avers that "[t]he

14   *only* difference between Mr. Drury's declaration in support of [*USRTK v. DOD*] and the one filed

15   here is the alleged reasonable hourly rates assigned to each attorney."  *Id*. (emphasis in original).

16           In *USRTK v. DOD*, Mr. Drury supported hourly rates of $878 per hour for Attorney Doughty

17   and $777 per hour for Attorney Rivo, which the court found were reasonable.  *Id*.  The Government

18   argues that in this case (and in contrast to the recent *USRTK v. DOD* case), "Mr. Drury opines that

19   hourly rates of $1,141 for Ms. Doughty and Rae Lovko . . . and $948 for Ms. Rivo and Ms. Blome

20   . . . are reasonable."  *Id*.  The Government argues that "[t]here is nothing in [USRTK's] motion or

21   Mr. Drury's declaration that supports a rate increase over what was just awarded [in *USRTK v.*

22   *DOD*]," and that "the rates sought here are excessive and should be reduced, at minimum, to the

23   amounts [the court in *USRTK v. DOD]* found to be reasonable."  *Id*. at 18–19.

24           The Government's simplistic approach to merely copy the rates awarded in *USRTK v. DOD*

25   is not well-supported in law.  When a party seeking fees submits declarations, courts must consider

26   them and cannot substitute that analysis by relying solely on previous fee awards.  *Roberts*, 938 F.3d

27   at 1024 ("The district court diverged from the applicable standard in discarding the declarations

28   entirely and considering only previous fee awards in determining the prevailing market rate.")

United States District Court
Northern District of California

13

1    (emphasis in original).  Indeed, the Ninth Circuit has explained that solely "[e]xamining prior fee

2    awards to [even the same attorneys] in the district [is] not an acceptable substitute for considering

3    declarations submitted by [that attorney], and explaining why those declarations did or did not

4    establish the prevailing hourly rate in the district."  *Id*. at 1025.

5       Here, as noted, USRTK submitted declarations from an expert witness (Mr. Drury) and

6    Attorney Doughty in support of their requested hourly rates, and pursuant to Ninth Circuit standards,

7    the Court considers the declarations to ultimately determine on the record presented in this case

8    whether USRTK's requested rates are or are not adequately supported here.    [Dkt. 58 at 18–19].

9    Mr. Drury "graduated from Yale Law School in 1990" and has been "a practicing California lawyer

10    for over thirty years."  [Dkt. 61 at ¶¶ 2, 4].  Mr. Drury attests that he is "very familiar with rates

11    charged by public interest lawyers in the San Francisco Bay Area and the market for services

12    performed by attorneys with the level of experience and competence of the lawyers in this action."

13    *Id*. at ¶ 4.  He cites to multiple cases that show varying fee awards granted to partners, associates,

14    and paralegals.  *Id*. at ¶¶ 6–17.  Mr. Drury further states that he is "familiar with attorney's fees

15    recently awarded to Greenfire Law, PC," citing to a case where Attorney Doughty was granted an

16    hourly rate of $720 and a case where Attorney Blome was awarded an hourly rate of $500.  *Id*. at ¶

17    18.   Additionally, Mr. Drury avers that "[a]nother useful benchmark in determining reasonable

18    market rates is the adjusted Laffey Matrix, named after *Laffey v. Northwest Airlines, Inc.*, 572 F.

19    Supp. 354, 371 (D.D.C. 1983)."  *Id*. at ¶ 19.  He states that multiple courts have relied on the Laffey

20    Matrix, "including federal courts in the Northern District of California."  *Id*.  At the time of Mr.

21    Drury's declaration, the "[Laffey Matrix] rates [were]: paralegals - $258; 1–3 year lawyers - $473;

22    4–7 year lawyers - $581; 8–10 year lawyers - $839; 11–19 year lawyers - $948; 20+ year lawyers -

23    $1,141."  *Id*. at ¶ 20.  Based on his review of the case and his knowledge of prevailing market rates,

24    Mr. Drury attests that the market rates identified by USRTK's counsel "are consistent with, or

25    substantially lower than, rates for attorneys with similar skill and experience for comparable

26    litigation in the Northern District of California."  *Id*. at ¶¶ 23–24.

27       The Court finds that Mr. Drury's declaration inadequately supports USRTK's requested

28    hourly rates in the instant motion.  Mr. Drury lists fee awards in several different types of cases (not

14

involving the lawyers for USRTK), including multiple class action lawsuits, breach of contract disputes, and anti-SLAPP cases. *Id.* at ¶¶ 6–17. While Mr. Drury reviewed many types of cases, he failed to testify as to a single FOIA case, despite there being numerous Northern District cases on point. *See Cohodes v. U.S. Dep't of Just.*, 2025 WL 572888, at \*3 (N.D. Cal. Jan. 24, 2025); *Am. Small Bus. League v. Small Bus. Admin.*, 2024 WL 3678001, at \*8 (N.D. Cal. Aug. 6, 2024); *Kopp v. U.S. Secret Serv.*, 2019 WL 2327933, at \*7 (N.D. Cal. May 31, 2019).

Had Mr. Drury reviewed FOIA cases from this District, he would have had to explain why the requested hourly rates for USRTK's attorneys here are substantially greater than previously approved rates in those FOIA cases. *See Cohodes*, 2025 WL 572888, at \*3–4, 12 (finding that hourly rates of $895 for attorneys were reasonable); *Am. Small Bus. League*, 2024 WL 3678001, at \*3, 10 (citing ECF No. 78-1) (finding that hourly rates up to $850 for attorneys was reasonable); *Kopp*, 2019 WL 2327933, at \*6–7 (finding that an hourly rate of $700 for a partner was reasonable). Because Mr. Drury's hourly rate analysis does not include a FOIA case, it is not a showing of "the rate prevailing in the community *for similar work*." *Hiken*, 836 F.3d at 1044 (emphasis added); *see Our Children's Earth Found.*, 2017 WL 783490 at \*11 (finding that a review of fee awards in a FOIA case that included class action litigation and only one FOIA case was not "based on the performance of 'similar work' by attorneys of comparable skill and experience."). Mr. Drury's failure to address these issues undermines his declaration's probative value.

Further, Mr. Drury lists a number of fee awards in California cases involving the Greenfire Law Firm, counsel for USRTK here. [Dkt. 61 at ¶ 18]. Notably, in none of those cases were the attorneys awarded fees at the rates requested here. According to Mr. Drury, in those other cases (ranging from 2020 to 2023), Attorney Doughty was awarded fees at rates of $575, $612, and $720. Greenfire Law was granted fees for administrative staff at rates ranging from $100 to $250. And Attorney Blome was awarded fees at a rate of $500 per hour. None of these cases was in this Court, and while three of the California cases were filed in California Superior Courts in counties within the geographic boundaries of the Northern District of California, two of those counties are in relatively rural parts of the state, and none is in an urban center of the Northern District. Fundamentally, this portion of the Drury declaration does not support the hourly rates requested in

the instant motion.

Moreover, USRTK's reliance on the 2024–2025 Laffey Matrix hourly rates is not sufficient support for the rates requested here. Mr. Drury opines that "the market rates identified by [USRTK's] counsel are well within the range of, if not below, prevailing market rates for attorneys with comparable expertise and skill in the San Francisco Bay Area." [Dkt. 61 at ¶ 25]. In her declaration, Attorney Doughty avers that "[t]he rates sought for each attorney are the rate[s] identified by [the] Laffey Matrix for 2024–2025." [Dkt. 59 at ¶ 17]. Mr. Drury and Attorney Doughty's dependence on the 2024–2025 rates is problematic given that a significant portion of this litigation occurred before those 2024-25 rates were applicable. *See* Laffey Matrix, http://www.laffeymatrix.com/see.html (last visited June 13, 2025) (the 2024–2025 Laffey Matrix rates apply from June 1, 2024, to May 31, 2025). USRTK was first invoiced for billable work in this case on June 21, 2023, and approximately 88 hours of billable work was incurred from that date until June 1, 2024. [Dkt. 59-1 at 2–10]. Of the 185 total hours billed in this case, approximately 47% of those hours were billed before June 1, 2024 (that is, before the cited Laffey 2024-25 matrix applied). [Dkt. 58 at 16]; *see also* Dkt. 59-1 at 2–10. Despite Mr. Drury's "familiarity with this litigation," he does not explain the basis for USRTK's Counsel's request for the 2024–2025 Laffey Matrix rates when nearly half of this litigation took place before those rates went into effect. [Dkt. 61 at ¶ 21].

Further, based on over thirty years of experience practicing law (particularly litigation) in the Northern District of California before joining the bench, this Court notes that, at the start of a case, it is not uncommon for attorneys to freeze their billing rates for the duration of the case. During the Motion for Attorney Fees hearing, USRTK's counsel agreed that it was not uncommon for billing rates to be frozen at the start of a case. [Dkt. 67]. It is highly improbable that USRTK's attorneys would have charged the 2024–2025 Laffey Matrix rates at the start of this case, because the instant litigation began before the 2024–2025 time period. *See* Dkt. 59-1 at 2. Mr. Drury's reliance on the 2024–2025 matrix rates is especially concerning given his experience and familiarity with attorneys' fees in the Bay Area. [Dkt. 61 at ¶ 4].

Further, while Mr. Drury avers that multiple courts in the Northern District have relied on

United States District Court
Northern District of California

the Laffey Matrix, the Ninth Circuit has questioned its use in this District.  Dkt. 61 at ¶ 19; *see Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("[J]ust because the *Laffey* [M]atrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away.").  "Absent some showing that the rates stated in the [Laffey] [M]atrix are in line with those prevailing in this community . . . the matrix is not persuasive evidence of the reasonableness of its requested rates." *Public.Resource.org v. United States Internal Revenue Serv.*, 2015 WL 9987018, at *6 (N.D. Cal. Nov. 20, 2015).  Similarly, Judge Orrick ruled on a FOIA fee motion that he "will not bind plaintiffs to the *Laffey* matrix, especially as statutory fee awards from this District do not establish that the *Laffey* matrix rates are in line with prevailing rates for statutory fee cases in the Bay Area legal community." *Our Children's Earth Found.*, 2017 WL 783490, at *10.

As noted above, the rates sought by USRTK's counsel are substantially greater than rates previously approved in FOIA cases in this District.  *See Cohodes*, 2025 WL 572888, at *3–4, 12; *Am. Small Bus. League*, 2024 WL 3678001, at *8 (citing ECF No. 78-1); *Kopp*, 2019 WL 2327933, at *6–7.  For the reasons discussed herein, the Court finds Mr. Drury's declaration is not "satisfactory evidence" that USRTK's requested rates are in line with those prevailing in the community.  And as noted, the Court finds that USRTK's arguments based on the Laffey Matrix does not support their requested rates.  Apart from Mr. Drury's declaration, USRTK provides no declarations or affidavits supporting an increase as compared to the previously awarded rates in FOIA cases in this Court.  USRTK has thus failed to provide "satisfactory evidence" that its requested rates are in line with those prevailing in the community for the kind of work performed here.  Accordingly, the Court finds that USRTK's counsel's requested hourly rates are not adequately supported and thus unreasonable.

Once a court finds that a requested hourly rate is unreasonable, the court may determine a reasonable hourly rate to use in calculating the lodestar figure.  *See Johnson v. Cala Stevens Creek/Monroe, LLC*, 2020 WL 2556989, at *5, 7 (N.D. Cal. May 20, 2020) (finding that Plaintiff's requested rates were unreasonable, and determining reasonable hourly rates in accordance with "case law from the district concerning reasonable attorney's fees"); *Brady v. Patenaude & Felix*,

United States District Court
Northern District of California

2019 WL 5535772, at *2 (N.D. Cal. Oct. 25, 2019) (finding that Plaintiff's requested hourly rates were unreasonable, and determining a reasonable hourly rate based on prior cases); *Kopp*, 2019 WL 2327933, at *7 (finding that Plaintiff's requested hourly rate of $850 was inadequately supported, and determining a reasonable hourly rate in accordance with a previous fee award).

The Court has reviewed the rates awarded in FOIA cases in this Court. The Court has also reviewed the materials submitted by the Parties. Based on the review of the record, the Court, in its discretion, finds that hourly rates of $878 for Attorney Doughty and Attorney Lovko and $777 for Attorney Rivo and Attorney Blome are reasonable. These hourly rates are consistent with fees awarded in prior Northern District FOIA cases. *See USRTK v. DOD*, 2025 WL 860503, at *7, 11; *Cohodes*, 2025 WL 572888, at *3–4, 12; *Am. Small Bus. League*, 2024 WL 3678001, at *3, 10 (citing ECF No. 78-1). Additionally, the Court finds USRTK's requested hourly rate of $258 for paralegals is reasonable and in line with previous FOIA cases. *See Cohodes*, 2025 WL 572888, at *3–4, 12 (finding that a rate of $325 per hour for paralegals was reasonable); *Kopp*, 2019 WL 2327933, at *6–7 (finding that a rate of $275 per hour for a paralegal was reasonable).

**B.    Reasonable Number of Hours**

"[A] 'reasonable' number of hours equals the number of hours which could reasonably have been billed to a private client." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (internal quotation marks and edits omitted). "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). Courts may exclude such hours using one of two methods. *Gonzalez*, 729 F.3d at 1203. First, courts "may conduct an hour-by-hour analysis of the fee request, and exclude those hours for which it would be unreasonable to compensate the prevailing party." *Id.* (internal quotation marks omitted). Second, courts "faced with a massive fee application" may "make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application." *Id.* (internal quotation marks and brackets omitted). Nevertheless, a court must explain how the amount of an attorneys' fees award was derived. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th

Cir. 2008).

The Government argues that USRTK's hours billed in this case are duplicative and excessive. [Dkt. 64 at 17, 19]. The Government argues that USRTK "seeks almost double [the amount in *USRTK v. DOD*] for an even more straight-forward, non-adversarial FOIA case." *Id.* at 17. In response, USRTK argues that the hours billed are reasonable and not excessive. [Dkt. 65 at 15]. Moreover, USRTK claims that "[the Government] provide[d] no evidence of what amount of time would [have] be[en] reasonable" to spend on this litigation. *Id.* at 16. USRTK additionally avers that it "already [have] reduced [its] fee demand overall by 23.77% . . . in the exercise of sound billing judgment." *Id.* (citing Dkt. 58 at 16).

The Government contends that the Court should deduct excessive and non-compensable hours spent by USRTK for: (1) drafting the complaint; (2) charging for court-mandated conferences; (3) spending time on strategy and analysis; (4) working on settlement and non-binding ADR; (5) spending time on administrative work; and (6) preparing USRTK's fee motion. [Dkt. 64 at 17–21]. The Court analyzes the Government's contentions in turn.

### 1. Drafting the Complaint

The Government claims that "[USRTK] billed 13.1 hours . . . solely on the drafting of a straightforward FOIA complaint." [Dkt. 64 at 19 (citing Dkt. 59-1 at 2 (entries on 7/14/23, 7/17/23, 7/18/23, 7/20/23, 7/21/23, 7/24/23, 8/3/23, 8/4/23))]. The Government argues that "the amount billed for those hours is excessive, especially for experienced counsel who routinely file very similar, formulaic FOIA complaints." [Dkt. 64 at 19].

The Court finds that the number of hours billed by USRTK for drafting the Complaint is unreasonable. The Complaints here and in *USRTK v. DOD* contain a substantial degree of overlap. *Compare* [Dkt. 1] *with* Compl., *USRTK v. DOD* (No. 23-cv-02956-TSH), 2025 WL 860503, ECF No. 1. The Complaint here does contain necessary information and details regarding USRTK's FOIA requests in the Statement of Operative Facts. *See* Dkt. 1. However, portions of the Statement of Operative Facts and the remainder of the Complaint are significantly similar to the Complaint in *USRTK v. DOD*. *Compare* Dkt. 1 with Coml., *USRTK v. DOD*, ECF No. 1. Considering that USRTK's counsel are "experienced attorneys with decades of experience in civil and public interest

United States District Court
Northern District of California

1    litigation," the Court finds that a private client would not pay for over one-and-one half days of

2    billable time (13.1 hours) for the drafting of this Complaint. [Dkt. 58 at 18 (citing Dkt. 59 at ¶¶ 3–

3    6)]. The Court acknowledges that USRTK voluntarily reduced the number of hours billed for

4    drafting the complaint from 16 hours to 13.1 hours in the exercise of sound billing judgment. *See*

5    Dkt. 59-1 at 2. Accordingly, the Court applies a 20% reduction to the 13.1 hours USRTK seeks.

6    ### 2. Court-Mandated Conferences

7    Next, the Government argues that USRTK "seeks fees for 11.9 hours . . . of work for 'court

8    mandated conferences,' . . . [which] reflect[s] routine litigation tasks such as reviewing and filing

9    form stipulations (see entries on 11/1/23, 11/2/23), reviewing the docket and court orders on case

10   management statements (see entries on 11/7/23, 11/8/23, 2/28/24, 3/8/24, 10/23/24), and internal

11   communications regarding calendaring case management conference dates (see entries on 4/19/24,

12   5/8/24, 8/12/24)." [Dkt. 64 at 20]. The Government claims that these billings "are excessive, both

13   in the amount of time billed and the rate charged." *Id.*

14   The Government's argument that these are "routine" tasks for which the billings are

15   excessive is not persuasive because "[c]ourts in this district have concluded that tasks such as filing

16   documents on ECF, revising and preparing documents referred to in time records as 'filings,' email

17   exchanges between attorneys, and organizing certain files in anticipation of preparing a motion are

18   not clerical tasks." *Am. Civil Liberties Union Immigrants' Right Projects v. U.S. Immigr. & Customs*

19   *Enf't*, 2018 WL 488997, at *5 (N.D. Cal. Jan. 19, 2018) (citing *Elder v. Nat'l Conference of Bar*

20   *Examiners*, 2011 WL 4079623, at *4 (N.D. Cal. Sept. 12, 2011)). Because the "routine litigation

21   tasks" attacked by the Government are not clerical, USRTK's incurring attorney rates for such tasks

22   are reasonable.

23   Furthermore, the Government fails to articulate why the amount of timed billed for court-

24   mandated conferences is excessive. Without any specific fault on USRTK's part, the Initial Case

25   Management Conference in this case was delayed repeatedly, which necessitated additional time

26   having to be spent on preparing and reviewing CMC statements. *See* Dkts. 28, 32, 35. The Court

27   finds that the time entries criticized by the Government are neither excessive nor redundant.

28   Accordingly, the Court finds that USRTK's billings for court-mandated conferences are reasonable.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

### 3.  Strategy and Analysis

Next, the Government argues that USRTK spent an "inordinate amount of time . . . on case strategizing—a result of overstaffing on this simple FOIA matter by alleged highly experienced FOIA litigation attorneys."  [Dkt. 64 at 20].  The Government alleges that USRTK "billed 26.4 hours . . . [on] strategy and analysis" and that "8.4 of these hours were spent conferring between high-billing attorneys (see . . . entries for 10/23/23, 10/31/23, 12/19/23, 1/2/24, 1/17/24, 1/23/24, 1/31/24, 2/7/24, 2/13/24, 3/12/24, 4/9/24, 4/15/24, 4/23/24, 5/8/24, 5/14/24, 9/24/24)."  *Id*.  The Government argues that "[t]he amount [USRTK] has billed in this matter toward strategy is over six times the amount . . . found reasonable in *USRTK v. DOD*."  *Id*.

While the Government describes these time entries as devoted to "strategy" and "analysis," a more detailed review indicates that the time entries in dispute relate to time spent on reviewing the produced documents, exchanging emails, and conferring between attorneys.  *See* Dkt. 59-1.  In a FOIA case, these are not merely superfluous "strategy" time entries but appear to be more directly related to the core types of work done on such a case.  The Government does not explain sufficiently why these billings themselves are excessive.  The Government's strawman approach is not persuasive because the Government's argument amounts to merely labeling these time entries as "strategy and analysis" and then comparing the total amount here with time spent on "strategy and analysis" in a different case with different counsel and defendants.  The Court finds that these criticized time entries could reasonably have been billed to a private client and are thus not excessive.

Further, the time spent conferring between USRTK's attorneys is reasonable.  While "[t]he Ninth Circuit has approved reducing fees for unnecessary internal communications," *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2020 WL 5371404, at *10 (N.D. Cal. Sept. 8, 2020) (citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007)), "[i]ntra-office communications are not always duplicative."  *Ehrhardt v. EPublishing, Inc.*, 2022 WL 22912938, at *6 (N.D. Cal. May 9, 2022).  Indeed, when "time entries include the discussion topic or include an attorney giving direction to a paralegal, the hours spent on intra-office communications are reasonable."  *Id*. (citing *MacDonald v. Ford Motor Co.*, 2016 WL 3055643, at

*4 (N.D. Cal. May 31, 2016)).  Here, the time entries at issue are detailed by including the actual topic of discussion between USRTK's attorneys.  *See, e.g.* Dkt. 59-1 at 10/23/23 ("Confer with RD regarding strategy"), 1/2/24 ("Confer with RSD about strategy for FOIA responses"), 3/12/24 ("Confer with RSD regarding Agency production of *Vaughn* index, strategy for follow-up with agency"), 5/14/24 ("Confer with RSD regarding strategy for case management statement, outstanding FOIA documentation and fee analysis").  That is, while the time entries refer to communications regarding "strategy", there is further detail that demonstrates that the time was spent actually discussing core issues in the case, such as the *Vaughn* index, the FOIA responses, and the CMC statement.  Accordingly, the number of hours billed by USRTK for "strategy and analysis" and communications between attorneys are reasonable.

### 4.  Settlement and Non-Binding ADR

The Government further argues that USRTK claiming "52.804 hours . . . of work for 'settlement/non-binding ADR'" is excessive.  [Dkt. 64 at 21 (citing Dkt. 59-1)].  The Government specifically argues that "[USRTK] billed over 50 hours to exchange a handful of settlement demands with [the Government] and prepare for and attend one half day settlement conference."  *Id*.  More specifically, the Government criticizes entries for "time spent [by USRTK] in preparation for the settlement conference," including "entries for compilation and analysis of billing records (entries on 5/16/24, 5/17/24, 7/1/24, 2/5/25), review of declarations (entries on 1/27/25, 1/28/25), and in one entry "review of motion for fees" (entry on 1/27/25)."  *Id*. (citing Dkt. 59-1).  The Government argues that these entries are duplicative of billing "entries on 3/4/25, 3/6/25, 3/7/25, 3/11/25, 3/12/25," which were incurred in preparation of USRTK's fees motion.  *Id*.

In reply, USRTK argues first that not all 50 hours were spent on exchanging settlement demands and the settlement conference, and points out that the Government does not specify which time entries among those 50 hours are unreasonable.  [Dkt. 65 at 16 n.2].  Further, USRTK argues that it "repeatedly tried to resolve the case without delay and the incurrence of associated billable hours," but that "[the Government's] delay and settlement posture made this impossible."  *Id*. at 16–17.  Noting that the Government complains that 54% of the fees requested are based on work on settlement and the instant motion, USRTK argues that the amount of fees incurred would have been

1    lower "but for" the Government's approach to settlement and the fees issue.  *Id.* at 17.

2         First, after a careful review of USRTK's "Settlement/Non-Binding ADR" billing entries, the

3    Court finds some entries to be repetitive and thus duplicative.  A court may reduce the lodestar

4    figure if the number of hours claimed is duplicative.  *Stonebrae, L.P. v. Toll Bros.*, 2011 WL

5    1334444, at *12 (N.D. Cal. Apr. 7, 2011) (citing *Chalmers*, 796 F.2d at 1210).  According to

6    USRTK's billing spreadsheet, USRTK seeks a total of one hour of fees for the following entries:

7    5/16/24 (.1 hours: "Discuss fees chart with co-counsel"); 12/30/24 (.1 hours: "Review settlement

8    correspondence with Agency"); 12/30/24 (.2 hours: "Discuss settlement efforts w/ co-counsel");

9    12/30/24 (.2 hours: "Confer with RSD regarding strategy, settlement and contacting the court

10   regarding same"); 1/22/25 (.2 hours: "Review and calendar instructions from Clerk"); 1/22/25 (.2

11   hours: "Exchange email with RB, RSD regarding settlement conference statement, attendance").

12   *See* Dkt. 59-1 at 9, 13–14.  Because these appear to be duplicative of other time entries, the Court

13   reduces USRTK's billings for "Settlement/Non-Binding ADR" by one hour to 51.804 hours.  [Dkt.

14   58 at 17].

15        Additionally, the Court, in its discretion, finds that USRTK spent an excessive amount of

16   time on settlement and non-binding ADR.  The Court acknowledges that parties are encouraged to

17   engage in settlement discussions for FOIA fees.  *USRTK v. DOD*, 2025 WL 860503, at *16 (citing

18   *Coffey v. Bureau of Land Mgmt.,* 316 F. Supp. 3d 168, 172 (D.D.C. 2018) (awarding fees for 11.9

19   hours of time spent in FOIA fees settlement discussions).  Settlement preparation and discussion

20   took place over a long period of time in this case, with the first mention of settlement in USRTK's

21   billing records being on May 15, 2024, and entries related to settlement continuing until February

22   10, 2025.  *See* Dkt. 59-1 at 9, 15.  During this nine month period, USRTK spent a significant amount

23   of time compiling billing records, reviewing declarations, conferring about settlement, and drafting

24   settlement offers.  *See id*. at 9–15.  Additionally, USRTK's attorneys spent approximately 15 hours

25   drafting, updating, reviewing, and finalizing their settlement conference statement.  *See id*. at

26   1/24/25, 1/27/25, 1/28/25, 1/30/25, and 1/31/25.

27        Because USRTK engaged in settlement discussions with the Government, those discussions

28   necessarily required USRTK's counsel to spend time preparing for and conferring about settlement.

United States District Court
Northern District of California

1   However, USRTK spent 15 hours, or almost two full business days, drafting a settlement conference

2   statement.  The Court finds that a private client would not pay for that much time spent drafting a

3   settlement conference statement, particularly when viewed in the context of the substantial amount

4   of time USRTK spent compiling, analyzing, and reviewing billing records and declarations (which

5   presumably preceded the drafting of the statement and should have been the kind of preparation

6   work which would be expected to reduce the time drafting the statement).  *See Gonzalez*, 729 F.3d

7   at 1202.  For similar reasons, USRTK's incurring over 50 hours of work towards settlement

8   preparation and negotiation in this case is excessive when viewed in the context of the other work

9   performed to collect the documents and information in the months prior to the actual negotiations.

10  For these reasons, the Court finds that a private client would not have paid for the total amount of

11  time USRTK spent on settlement and non-binding ADR.

12      The Court recognizes that USRTK voluntarily reduced the hours billed towards settlement

13  and non-binding ADR from 56 hours to 52.804 hours in the exercise of sound billing judgment.

14  [Dkt. 58 at 17].  As previously noted, the Court reduced USRTK's billings for settlement and non-

15  binding ADR by one hour to 51.804 hours.  Accordingly, the Court applies a final 20% reduction to

16  the 51.804 hours spent by USRTK.

17      **5.  Administrative Work**

18      The Government next argues that "[USRTK] has billed 1.6 hours . . . for noncompensable

19  administrative work, such as downloading documents (entry on 2/5/25), calendaring (entries on

20  4/22/24, 1/22/25, 3/5/25), and docketing (entries on 11/3/23, 2/11/25, 2/28/25)."  [Dkt. 64 at 20

21  (citing Dkt. 59-1)].  The Government argues that these entries should be rejected.  *Id.*  USRTK does

22  not explicitly respond to the Government's contentions regarding this administrative work.  *See* Dkt.

23  65 at 15–16.

24      Attorney fees should not be awarded for purely clerical tasks, even at paralegal rates, because

25  such work should be subsumed in a law firm's overhead.  *Nadarajah v. Holder*, 569 F.3d 906, 921

26  (9th Cir. 2009).  Clerical work such as calendaring, scheduling, and docketing is not compensable

27  as attorney fees.  *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1105 (N.D. Cal.

28  Feb. 18, 2010) (citing *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992)

United States District Court
Northern District of California

*vacated in part on other grounds at* 984 F.2d 345 (9th Cir. 1993)). In light of the lack of specific rebuttal by USRTK and the legal standards discussed, the Court finds the following entries constitute non-compensable administrative work: 4/22/24 ("Review order from court regarding new deadlines, calendar accordingly"); 1/22/25 ("Review and calendar instructions from clerk"); 2/5/25 ("Check Judge Beeler's department website, add Zoom information to calendar; review and download standing order; email to team"); 2/11/25 ("Update docket and file; update tasks and calendaring"); 2/28/25 ("Docket all deadlines for fee briefing per stipulation to be filed"). [Dkt. 59-1 at 8, 14–15]. Thus, the total reduction for these time entries is 1.3 hours.

However, the Court finds that the billing entry on 3/5/25 does not constitute "calendaring" administrative work, as the Government alleges. *Id.* at 15. Rather, the only entry dated March 5, 2025 which refers to calendaring reads in full "Review stipulation and calendared dates for fee motion", by attorney Rivo for 0.2 hours. *Id.* This is facially not time spent on an administrative task for calendaring, but rather is work performed by an attorney directly related to the fee motion. The time spent is reasonable. *Id.* Further, the Court declines to deduct hours relating to the criticized billing entry on 11/3/23, because USRTK has already fully reduced those hours in the exercise of sound billing judgment. *Id.* at 5. at 15. ("Review stipulation and calendared dates for fee motion").

### 6. Fees-on-Fees Request

While the Government does "not contend that hours spent on a fees motion are noncompensable (assuming the Court finds that [USRTK] is entitled to fees in the first place)," the Government argues that USRTK's fees motion is duplicative and that the billings for the instant motion are thus excessive. [Dkt. 64 at 17, 21]. The Government argues that "[a] review of the fees motions [here and in *USRTK v. DOD*] reveals that entire portions and pages of the instant motion are identical to those filed in the first USRTK case, including the standard of review, entitlement, and reasonableness of fees sections." *Id.* at 17. Further, the Government argues that "[i]n effect, [USRTK] and its counsel are double billing for substantially identical fees motion practice in two cases." *Id.* at 18. In reply, USRTK argues that "the fee motions in the two cases are not identical as they involve completely different background facts and a different defendant, necessarily making the argument section different." [Dkt. 65 at 15]. USRTK argues that "[t]he fact that a handful of

1    paragraphs addressing foundational law in FOIA cases are the same does not render Plaintiff's

2    billing in this case excessive." *Id.*

3        Under Ninth Circuit precedent (and as essentially admitted by the Government), plaintiffs

4    may recover attorneys' fees for time reasonably expended on a motion for attorney fees and costs.

5    *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990). An inflated request for a "fees-on-fees" award

6    may be reduced to an amount deemed reasonable by the awarding court. *Rosenfeld*, 903 F. Supp.

7    2d at 878. A reduction in hours is appropriate if a court reasonably concludes that preparation of a

8    fees motion "demanded little of counsel's time." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 950

9    (9th Cir. 2007).

10        While the two fee motions prepared for this case and for *USRTK v. DOD* involve completely

11    different backgrounds and defendants, the Government is correct that large portions of the fee

12    motion here are duplicative of the fee motion in *USRTK v. DOD*. Outside of the background section

13    and small portions of the argument section, there is a substantial degree of overlap between the two

14    fee motions. *Compare* [Dkt. 58] *with* Pl.'s Mot. Att'y Fees, *USRTK v. DOD*, ECF No. 33. Contrary

15    to USRTK's characterization, more than "a handful of paragraphs" are the same in the two motions.

16    *Id.* Even though the fee motion in *USRTK v. DOD* was written by different counsel, with USRTK's

17    current counsel having "assist[ed] with edits and factual content [on that motion]," a review

18    demonstrates that the two motions are considerably similar. [Dkt. 65 at 15].

19        Because preparation and drafting of the fee motion here benefited from the work performed

20    to prepare the fee motion in *USRTK v. DOD*, the Court finds that the requested fee award relating

21    to the instant motion is excessive and warrants reduction. *See Rosenfeld*, 903 F. Supp. 2d at 879

22    (finding that two fee motions contained a substantial degree of overlap, reducing the "grossly

23    inflated" fees on fees award by 30%). Because of the facially apparent overlap between the motions,

24    preparation of the instant fee motion should have required much less time than the 24.5 hours

25    USRTK seeks. [Dkt. 58 at 17]. This is especially true given that the Government did not contest

26    eligibility, saving USRTK time arguing that issue. [Dkt. 64 at 17]. Furthermore, fee motions are

27    not particularly complicated, and USRTK's attorneys are experienced in FOIA litigation. *See*

28    *Rosenfeld*, 903 F. Supp. 2d at 879 ("The [fee] motion is not particularly complicated, and counsel

26

are experienced in this field."). Further, as noted above, USRTK spent billable time collecting the documents and information necessary for the instant fees motion earlier in the case. While USRTK exercised sound billing judgment by voluntarily reducing the hours billed for preparing this fee motion from 26.1 hours to 24.5 hours, that reduction is less than 10% of the requested amount. [Dkt. 58 at 17]. Accordingly, the Court applies a 20% reduction to the 24.5 hours USRTK seeks.

In addition to time spent preparing the fee motion, USRTK billed 16.3 hours for time spent responding to the Government's Opposition. *See* Dkt. 66-1. USRTK submitted a record of billing entries in support of its requested billings. *Id.* Attorney fees may be awarded for the entire course of litigation, including time spent defending a motion for attorney fees. *Brown*, 916 F.2d at 497. "If new evidence has been submitted in [a] reply, the opposing party may file an Objection to Reply Evidence stating its objections to the new evidence within seven days after the reply was filed." *Am. Small Bus. League*, 2024 WL 3678001, at *13. Here, the Government had the opportunity to object to USRTK's billing entries related to its reply on the instant motion but did not do so.

Nevertheless, the Court finds that USRTK spent an excessive amount of time drafting the reply brief. While working on the reply, USRTK's attorneys spent a significant amount of time conferring, strategizing, researching case law, and reviewing the Government's opposition. *See* Dkt. 66-1. Additionally, Attorney Rivo spent 6.5 hours outlining and updating arguments and drafting a summary document to refute the Government's opposition. *See, e.g., id.* at 3/31/25 ("Outline arguments for reply brief, review correspondence to refute arguments"), 3/31/25 ("Update arguments on exemptions (b)(4) and (b)(5); draft reply section on entitlement"), 3/31/25 ("Update summary of agency response to requests for entitlement section"), 4/1/25 ("Update reply brief to address arguments regarding fees-on-fees and billing practices"), 4/1/25 ("Update entitlement section, request one in reply brief"), 4/1/25 ("Update argument on third party reliance and discretion as justification for reasonableness ISO reply brief"), 4/2/25 ("Draft summary doc for co counsel with correspondence and overview of fees argument to refute opposition"). Despite the extensive amount of time spent in preparation for drafting the reply brief (including drafting by Attorney Rivo of documents which summarized arguments as discussed above), Attorney Lovko billed approximately 9 hours to actually draft USRTK's fee motion reply brief, which is excessive given

27

the amount of strategizing and preparatory work (and particularly because this was a reply brief, not an opening brief). *See id*. at 4. The Court recognizes that counsel for USRTK exercised sound billing judgment by reducing their billed hours for time spent on the reply by approximately 10 hours. *See id*. at 1–4 (reducing the hours billed from 26.5 hours to 16.3 hours). However, given the substantial amount of time spent preparing and strategizing for the reply brief (and the drafting by Attorney Rivo of documents summarizing arguments), the Court finds that a private client would not reasonably pay for 9 hours of work for the actual drafting of the reply brief. Accordingly, the Court applies a one-third (approximately 33%) reduction of the 9 hours spent by Attorney Lovko drafting the reply brief, to bring that number down to 6 hours.

## C.    Lodestar Figure

In determining the fees to be awarded, the Court must determine the lodestar figure by multiplying USRTK's reasonable hourly rates by the number of hours reasonably expended by USRTK. *See Hiken*, 836 F.3d at 1044. As previously discussed, the Court found hourly rates of $878 for each of Attorneys Doughty and Lovko and $777 for each of Attorneys Rivo and Blome to be reasonable. Additionally, the Court reasonably reduced the hours billed by USRTK's attorneys for the drafting of the complaint, time spent on settlement and non-binding ADR, administrative work, the fee motion, and USRTK's reply brief on the instant motion. The Court now calculates the reasonable number of hours expended by USRTK in light of these reductions.

USRTK seeks fees for a total of 160.3 hours of work in this case, including time spent on the reply briefing to respond to the Government's opposition to USRTK's fees motion. *See* Dkts. 58 at 16, 66-1 at 1–4. Of the 160.3 hours sought, Attorney Doughty billed 19.21 hours, Attorney Rivo billed 109.148 hours, Attorney Blome billed 2.75 hours, Attorney Lovko billed 24.9 hours, and administrative staff and paralegals billed 4.3 hours. *See id.*

For the 13.1 total hours spent drafting USRTK's complaint, 12.1 hours were billed by Attorney Rivo and 1 hour was billed by Attorney Blome. *See* Dkt. 59-1 at 2. Having found reasonable a 20% reduction to these billings, the Court reduces the hours billed to Attorney Rivo by 2.42 hours (for a new total of 9.68 hours) and the hours billed to Attorney Blome by 0.2 hours (for a new total of 0.8 hours).

United States District Court
Northern District of California

Next, USRTK's billings for "Settlement/Non-Binding ADR" total 51.8 hours,[1] as the Court previously deducted one hour from USRTK's billings due to repetitive and duplicative entries.  *See id*. at 9–15.  Of these 51.8 total hours, 9.1 hours were billed by Attorney Doughty, 41.8 hours were billed by Attorney Rivo, 0.1 hours were billed by Attorney Blome, and 0.8 hours were billed by administrative staff and paralegals.  *See id*.  The Court previously applied a 20% reduction to these billings, and thus reduces the following hours billed by USRTK's attorneys: 1.82 hours for Attorney Doughty (for a new total of 7.28 hours); 8.36 hours for Attorney Rivo (for a new total of 33.44 hours); 0.02 hours for Attorney Blome (for a new total of 0.08 hours); and 0.16 hours for administrative staff and paralegals (for a new total of 0.64 hours).  *See id*. at 9–15.

Regarding the 1.3 non-compensable hours related to administrative billings, the Court deducts 0.5 hours from Attorney Rivo's time billed and 0.8 hours from billings by administrative staff and paralegals.  *See id*. at 8, 14–15.

The number of hours billed by each of USRTK's attorneys on its fee motion, which totals 24.5 hours, is as follows: 2.7 hours billed by Attorney Doughty; 8 hours billed by Attorney Rivo; 13.1 hours billed by Attorney Lovko; and 0.7 hours billed by administrative staff and paralegals.  *See id*. at 12–13, 15–16.  Based on the Court's finding that a 20% reduction of time billed for the fees motion is appropriate, the Court reduces the following hours billed by USRTK's attorneys: 0.54 hours for Attorney Doughty (for a new total of 2.16 hours); 1.6 hours for Attorney Rivo (for a new total of 6.4 hours); 2.62 hours for Attorney Lovko (for a new total of 10.48 hours); and 0.14 hours for administrative staff and paralegals (for a new total of 0.56 hours).  *See id*.

Finally, based on the Court's finding to reduce the 9 hours billed by Attorney Lovko on drafting the reply brief to the Government's opposition to the instant fees motion by one-third, the Court reduces the hours billed to Attorney Lovko by 3 hours (for a new total of 6 hours).  *See* Dkt. 66-1 at 4.

Following these reductions, the Court finds the following number of hours, totaling 132.128

---

[1] After carefully reviewing USRTK's billing entries, the Court is unable to locate an entry equaling 0.004 hours spent on "Settlement/Non-Binding ADR."  *See* Dkt. 59-1.  Accordingly, the Court uses 51.8 hours instead of 51.804 hours for time spent on settlement and non-binding ADR.

United States District Court
Northern District of California

United States District Court
Northern District of California

hours, to be reasonably expended by USRTK's attorneys: 16.85 hours for Attorney Doughty; 96.268 hours for Attorney Rivo; 2.53 hours for Attorney Blome; 19.28 hours for Attorney Lovko; and 3.2 hours for administrative staff and paralegals.  Having determined the reasonable hourly rate and the reasonable number of hours expended, the Court can properly calculate the Lodestar figure.

The following table summarizes the Court's Lodestar figure calculation:

| | Reasonable Hourly Rate | Number of Hours Reasonably Expended | Total Reasonable Fee |
|---|---|---|---|
| Attorney Doughty | $878 per hour | 16.85 hours | $14,794.30 |
| Attorney Rivo | $777 per hour | 96.268 hours | $74,800.24 |
| Attorney Blome | $777 per hour | 2.53 hours | $1,965.81 |
| Attorney Lovko | $878 per hour | 19.28 hours | $16,927.84 |
| Administrative Staff and Paralegals | $258 per hour | 3.2 hours | $825.60 |
| Total | | 138.128 hours | $109,313.79 |

Accordingly, the Court awards $109,313.79 in attorneys' fees.

**D.    Costs**

USRTK additionally seeks a total of $1,337.60 in costs, consisting of $47.16 for service of process (8/23/2023), $402.00 for filing the pleadings (8/23/2023), $32.46 for "FedEx charges for overnight delivery to court" (1/31/2025), $56.00 for parking fees for attending a hearing (2/14/2025), and $800.00 in expert fees for Mr. Drury's declaration.  [Dkt. 58 at 16, 19].  The Government does not explicitly contest USRTK's requested cost entries.  *See* Dkt. 64.

Generally, costs are awarded to the prevailing party in civil actions. Fed. R. Civ. R. 54(d)(1). However, courts may only award "costs against the United States, its officers, and its agencies . . . to the extent allowed by law."  Fed. R. Civ. R. 54(d)(1).  In FOIA cases, courts may "assess against the United States . . . litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  Accordingly, the Court must assess whether USRTK's requested costs were reasonably incurred.

Based on precedent awarding such costs, the Court finds USRTK's request for costs reasonable as to service of process and the filing of pleadings. *See Hum. Rights. Def. Ctr. v. Cnty. of Napa*, 2021 WL 1176640, at *14 (N.D. Cal. Mar. 28, 2021) (awarding costs for filing fees and service of process fees); *Cruz v. Starbucks Corp.*, 2013 WL 2447862, at *10 (N.D. Cal. June 5, 2013) (awarding filing fees and service of process fees). Additionally, the Court finds USRTK's request for "FedEx charges for overnight delivery to court" and parking fees are reasonable.

Regarding USRTK's request for costs for Mr. Drury's expert declaration, FOIA does not explicitly allow for the recovery of costs associated with expert witnesses and consultants. *See USRTK v. DOD*, 2025 WL 860503, at *19. "[C]ourts have held that th[e] language in FOIA does not constitute the explicit authorization needed to allow recovery of expert witness expenses beyond the per diem expert witness fee authorized by 18 U.S.C. § 1821." *Id*. (quoting *Myers v. Aitkin Cnty.*, 2016 WL 11186989, at *21 (D. Minn. Nov. 30, 2016), *report and recommendation adopted in relevant part, rejected in part*, 2017 WL 1134575 (D. Minn. Mar. 27, 2017)). The Court thus declines to award USRTK's request for $800 related to Mr. Drury's expert declaration.

Accordingly, the Court awards USRTK $537.62 in recoverable costs as authorized under § 552(a)(4)(E)(i).

## CONCLUSION

For all the reasons discussed herein, the Court **GRANTS-IN-PART** and **DENIES IN PART** Plaintiff's motion for an award of attorneys' fees and costs. As discussed herein, the Court awards to Plaintiff the amount of $109,313.79 in attorneys' fees and $537.62 in costs, totaling $109,851.41.

This **RESOLVES** Dkt. 58.

**IT IS SO ORDERED.**

Dated: October 9, 2025

_____
PETER H. KANG
United States Magistrate Judge